[No. 13783. Department Two. May 21, 1917.]

G. M. STEWART, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

RAILROADS — CROSSING ACCIDENTS — CONTRIBUTORY NEGLIGENCE — FAILING TO STOP, LOOK, AND LISTEN—QUESTION FOR JURY. Contributory negligence in failing to stop, look, and listen before driving a horse upon a railroad crossing is a question for the jury, where it appears that buildings and a box car near the main track obstructed the view until opposite the end of the corner of the car, that an automatic electric gong relied upon by plaintiff did not ring, that proceeding slowly and almost stopping his horse, he listened for trains, and failed to hear an approaching passenger train coming noiselessly down grade, and that thereupon he speeded up his horse to cross, and did not see the train until he passed the car, when he was too late to turn his horse to avoid the train.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered June 26, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Englehart & Rigg* and *R. J. Venables*, for appellant.

*H. J. Snively* and *I. J. Bounds*, for respondent.

PARKER, J.—The plaintiff, Stewart, seeks recovery of damages for personal injuries, for the killing of his horse and injury to his buggy, which he claims resulted from the negligence of the defendant railway company. Trial in the superior court for Yakima county sitting with a jury resulted in a verdict and judgment awarding him $2,500, from which the defendant has appealed to this court.

Counsel for appellant make the single contention here that respondent's own negligence and want of care so contributed to his damages that he should not be allowed to recover in this action, and that it should be so decided as a matter of law. They made appropriate motions in that behalf in the superior court at the close of the trial, which motions were by

[1]Reported in 165 Pac. 377.

the trial court denied and the question of respondent's contributory negligence submitted to the jury, together with the question of appellant's negligence. It is conceded by counsel for appellant that the evidence introduced was such as to call for the submission to the jury of the question of appellant's negligence, and sufficient to support recovery against appellant but for respondent's contributory negligence.

The accident in question occurred at the crossing of appellant's main line of railway and a much traveled street, the center line of which marks the northern city limits of Yakima. The railway at this point runs approximately north and south, while the street runs east and west, so that they cross each other at approximately right angles. East-bound trains approach this crossing and the city of Yakima from the north. For a considerable distance north of this crossing, indeed, for several miles, and also south of it into the city, the railway runs down grade. Because of this, east-bound trains coming into the city from the north are allowed to run towards and over this crossing by gravity and their own momentum, without the application of steam power and without the noise usually incident thereto, commencing to so run a long distance before reaching the crossing. Passenger trains are in the habit of going over this crossing at a rate of about twenty miles per hour, which is the city ordinance speed limit. This is a very much used crossing, it being on the main traveled highway from the business portion of the city to a suburb of some considerable population called Fruitvale. Appellant, evidently appreciating its dangers, maintains an electric gong at the crossing, which, when in working order, automatically commences to ring as a warning of the approach of any train from the north when it reaches a point approximately one half mile north of the crossing. On the north side of the street and east of the railway tracks are Standard Oil Company buildings and a yard surrounded by a high board fence, and also an orchard. The main building of the oil company, at its southwest corner, is on the street

line, and is 42.7 feet from the center of the main line track of the railway.

At the time of the accident, there was a box car on a spur track adjacent to the building on the west which projected one foot into the street beyond the building. The southwest corner of this car was 28.4 feet from the center of the main line track, and would be approximately twenty-three feet from the end of the cross-beam on the front of a passing engine and about the same distance from the side of the cars of a passing train. The orchard back of the oil company's yard comes to within about thirty feet of the main track. The orchard, the oil company's structures, and the car standing upon the spur obstructed the view of the track to the north from the street, so that one approaching the track from the east would have no view of the track to the north, except such as could be obtained when he had reached a point near the southwest corner of the car. The usable driveway portion of the street was principally to the north of the center line of the street, so that one approaching the railway from the east would drive along within approximately twenty or twenty-five feet of the oil company's fence and buildings, and slightly closer to the end of the car on the spur track at the time of the accident. Thus a person so approaching the track along the roadway from the east would have a very limited view of the track to the north until he came nearly opposite the corner of the car.

Respondent lived at Fruitvale and was driving his horse hitched to his buggy, from the business portion of the city to his home, approaching the track along the street from the east. He was quite well acquainted with the crossing, having driven over it a great many times. He knew of the electric gong being there and had heeded its warning on previous occasions of the passing of trains and had come to depend upon it. He did not know that it was then, or ever had been, out of working order. When he arrived near the corner of the oil company's building and the car upon the spur track,

he proceeded very slowly, almost stopping his horse, and listened for the approach of any train from the north. Not hearing the approach of any train from that direction, and the gong then not ringing, and seeing only an engine on the west sidetrack about one hundred and fifty feet south of the crossing, headed north, apparently about to start, he speeded up his horse to about five miles per hour with the view of passing quickly over the tracks, which plainly he could safely· do, in so far as that engine was concerned.

Upon passing the end of the car, he saw a passenger train bearing down upon him from the north a very short distance away, at a speed estimated by the several witnesses at from twenty to twenty-five miles per hour. He tried to turn his horse to the left, but before he could do so, the horse was struck by the end of the crossbeam on the front of the engine, throwing it against the side of the engine, killing it instantly, injuring the buggy, and also seriously injuring him. The fireman, having a clear view on that side of the engine and being then on the lookout, first saw the horse's head and shoulders when the front of the engine was about fifty feet and the cab about one hundred feet from the crossing. If the fireman's version is correct, then it seems plain the respondent did not see the engine until his horse was somewhat closer to the track, since he was sitting in the buggy some thirteen feet back of the horse. The jury might well conclude that, from the time the fireman saw the horse, or from the time the respondent first saw his own danger until the collision, less than two seconds elapsed. The whistle of the engine seems to have been blown for the station at the usual place, some half a mile north of the crossing. Respondent says he did not hear it, nor did he hear the engine's bell ring. This it is possible to account for by the orchard and oil company's structures being between him and the approaching train. It seems to be conceded that there was no blowing of the whistle for the crossing, though apparently the bell was being rung. The train was running on schedule time, but

respondent says that he did not know it was then time for any train to pass. Respondent's driving a horse would render his position somewhat more critical than as if he had been driving a motor propelled vehicle, which, of course, would have been subject to more effectual control because of the absence of the element of fright on the part of the horse. This summary of the facts, we think, is as favorable to appellant's contention that respondent was guilty of contributory negligence, as a matter of law, as the evidence will warrant.

Counsel for appellant invoke the general rule of stop, look and listen as though it were a hard and fast rule of law which can be applied and made determinative of the question of plaintiff's contributory negligence in a crossing case without regard to the varying circumstances of the particular case to be decided, and as though it was, under all circumstances, negligence *per se* not to stop, look and listen upon approaching a railway crossing. They also seem to argue that it can be readily determined, as a question of law, whether one has stopped, looked or listened to the extent required by law in a given case. It seems to us that the rule cannot be so readily applied as an exact measure of duty on the part of one approaching a railway crossing. If the probability of danger is very great, one might well be held to the duty of stopping some considerable time and looking or listening, or both, with great care. On the other hand, if the surrounding circumstances are such as to indicate to an ordinarily prudent person that the probability of danger is but slight, then the measure of time and care to be used in stopping to look or listen would seem to diminish proportionately. These observations seem to suggest, even if there be no dispute as to the facts, that the inference to be drawn therefrom may be so debatable as to induce different minds to arrive at different conclusions upon the question of whether or not one approaching a railway crossing and injured there by a passing train is guilty of contributory negligence because of his failure to stop, look and listen with that degree of care the law requires.

Judge Dunbar, speaking for the court in *Averbuch v. Great Northern R. Co.*, 55 Wash. 633, 104 Pac. 1103, made some observations touching the general rule of stop, look and listen in harmony with these views. Now an inquiry which involves the possible affirmative determination that plaintiff has been guilty of contributory negligence, as a matter of law, the negligence of his opponent concededly appearing sufficient for submission to the jury, we apprehend should be approached with somewhat greater caution than an inquiry which involves only the question of whether or not any evidence has been produced warranting the submission of a question to the jury. In the former case it is deciding, as a matter of law, that the fact has been conclusively affirmatively proven, while in the latter it is deciding, as a matter of law, that no evidence has been introduced to prove a fact. It seems to us that there is more danger of invading the province of the jury in the former than in the latter inquiry. In *Steele v. Northern Pac. R. Co.*, 21 Wash. 287, 57 Pac. 820, Judge Dunbar, speaking for the court, observed and quoted with approval from two eminent authors as follows:

" 'It is frequently stated that, when the facts are undisputed or conclusively proved, the question of negligence is to be decided by the court. A better opinion, however, would seem to be that, in order to justify the withdrawal of the case from the jury, the facts of the case should not only be undisputed, but the conclusion to be drawn from those facts indisputable. Whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should properly be left to the jury.' 2 Thompson, Negligence, p. 1236.

"As showing the impropriety of judges taking this question from the jury, except in cases showing undisputed and palpable negligence, it is said by Mr. Cooley, in his work on Torts (p. 802):

" 'If the judge, in such a case, were to pass upon negligence as a question of law, he must, in doing so, be endeavoring to enforce a rule of a variable nature, which must take its final coloring from the experience, training and temperament of

the judge himself; a rule which his predecessor might not
have accepted, and which his successor may reject, and upon
which a court of review may reverse his action, not because the
facts are differently regarded, but because judges are men
and men are different. As has been said in one case, it must
be a very clear case, indeed, which would justify the court in
taking upon itself this responsibility. For when the judge
decides that a want of due care is or is not shown, he neces-
sarily fixes in his own mind the standard of ordinary prudence,
and, measuring the conduct of the party by that, turns the
case out of court or otherwise disposes of it upon his opinion
of what a reasonably prudent man ought to have done under
the circumstances.' ''

Observations made by us in *Richmond v. Tacoma R. &
Power Co.*, 67 Wash. 444, 122 Pac. 351, are quite in har-
mony with these views. A number of decisions of this court
there noticed clearly show the reluctance with which this court
ever takes the. question of contributory negligence away from
the jury and decides affirmatively that the plaintiff is guilty
of such negligence. Probably the clearest general statement
of the view of this court upon that question is that made by
Judge White in *Traver v. Spokane Street R. Co.*, 25 Wash.
225, 239, 65 Pac. 284, as follows:

"The great weight of authority is to the effect that, before
a court will be justified in taking from the jury the question
of contributory negligence, the acts done must be so palpably
negligent that there can be no two opinions concerning them."

See, also, 1 Thompson, Negligence, § 425; 2 Cooley, Torts
(3d ed.), p. 1428.

Now we have seen that respondent did come almost to a
stop and listened when, as can well be argued, he was as near
the main track of the railway as it was safe for him to go with
his horse before deciding that he could safely proceed; that
the electric gong was then silent; that he failed to hear the
approach of any train from the north; and that the train was
running down grade of its own momentum and, therefore, not
making as much noise as it otherwise would. In view of these

facts, we think it cannot be said, as a matter of law, that a reasonably prudent man, in the situation respondent was, would not have proceeded across the track.  It is true respondent did not look.  Where he came almost to a stop with a view of listening he could not have seen had he looked in the direction of the approaching train.  It may well be argued, as already suggested, that he then had approached as close to the main track as it was safe for him to do before deciding whether or not he could safely proceed, in view of the fact that he was driving a horse and not an inanimate motor propelled vehicle.  Had he proceeded beyond the end of the freight car a sufficient distance so that he could have seen north along the track for any considerable distance before stopping, he would have then placed himself and horse in great danger, considering the great probability of the fright of the horse with its head so close to the track on which the train was approaching.  Had he been injured by reason of having come into that position, which would have been highly probable, though not by collision with the train, and sought relief from the railway company on account of its negligence, it would no doubt be here urging his contributory negligence, as it is now doing, and with just as much reason for success upon that ground.  It may be that the jury would and should have found that respondent was guilty of contributory negligence in approaching and attempting to cross as he did, and it may be that the trial judge, and also the judges of this court, were they triers of the facts, would arrive at that conclusion; but that is quite a different matter than so deciding as a matter of law.  That of itself does not argue that there was nothing for the jury to decide as a matter of fact. We cannot escape the conclusion that there is room for honest difference of opinion as to whether respondent obeyed the stop, look and listen rule to the extent he should have done, in the light of the facts then appearing to him as a reasonably prudent man.  The following decisions of this court in crossing cases, as well as those already noticed, we think sup-

port this conclusion: *Northern Pac. R. Co. v. Holmes*, 3 Wash. Terr. 543, 18 Pac. 76; *Ladouceur v. Northern Pac. R. Co.*, 4 Wash. 38, 29 Pac. 942.

The decisions in *Dukeman v. Cleveland, C., C. & St. L. R. Co.*, 237 Ill. 104, 86 N. E. 712, and *Pendroy v. Great Northern R. Co.*, 17 N. D. 433, 117 N. W. 531, are in point as showing that the rule of stop, look and listen does not in all cases render a party approaching a railway crossing guilty of contributory negligence, as a matter of law, by his failure to stop, look and listen, and also as showing that the extent to which he must stop, look and listen, and the degree of care he must exercise in that regard, is not always the same.

In the following decisions the courts seem to have regarded the presence of an automatic electric bell or gong maintained at a crossing as a warning of the approach of trains, and its ringing or failure to ring, as an element entering into the question of one's negligence in approaching a crossing in the light of the stop, look and listen rule. *McSweeney v. Erie R. Co.*, 93 App. Div. 496, 87 N. Y. Supp. 836; *Cleveland, C., C. & St. L. R. Co. v. Heine*, 28 Ind. App. 163, 62 N. E. 455; *Cincinnati, N. O. & T. P. R. Co. v. Champ*, 31 Ky. Law 1054, 104 S. W. 988; *Jacobs v. Atchison, T. & S. F. R. Co.*, 97 Kan. 247, 154 Pac. 1023, L. R. A. 1916D 783.

It is true these cases all seem to hold that one approaching a railway crossing has no right to rely entirely upon an automatic gong maintained there by the railway company to give warning of the approach of trains, but they do recognize that he may properly consider the ringing or failure to ring of such a gong in connection with other things evidenced by the proper use of his senses to determine whether or not there is present danger. The last cited case may seem to be opposed to this view, but read in the light of its own facts, we can hardly so regard it. That was a case of an automobile approaching a railway crossing under such circumstances that it could have been stopped at a point near the track where the approaching train would have been plainly seen.

Common experience teaches us that an automobile can be stopped with safety much closer to a track upon which there is a speeding train than can the ordinary horse. To stop a horse with its head, say within ten feet of a track on which there is a speeding train, would ordinarily seem little short of foolhardy, while an automobile could stand even closer to a train moving at great speed with comparative safety, the difference being that the driver has not that absolute control over his horse that the driver has over his automobile. In harmony with the views expressed in these cases, similar views have been expressed in cases where there are maintained gates at crossings, and the gates being open has been considered as some evidence to the public that no train was approaching. *Ellis v. Boston & Maine R. R.*, 169 Mass. 600, 48 N. E. 839; *McClain v. Chicago, R. I. & P. R. Co.*, 89 Kan. 24, 130 Pac. 646, Ann. Cas. 1914C 699.

We are not arguing that respondent had the right to depend wholly upon the ringing of the electric gong at the crossing to advise him of the approach of a train, without the use of his senses in other respects or without in some measure stopping and listening, but only that the presence of the gong there, his knowledge thereof, his experience with it on previous occasions, and not knowing that it was then out of order or that it ever had been out of order, in some measure lessen the degree of care to be exercised by him in stopping and listening. These facts, taken together with the fact that he was driving a horse instead of an inanimate motor driven vehicle, might have induced the jury to believe that, as a reasonably prudent man, he was not negligent in proceeding as he did and without first going forward a sufficient distance to see along the track and stopping and looking.

Let us now notice the decisions of the courts relied upon by counsel for appellant, and also one or two others which may seem to lend it support.

In *Woolf v. Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997, the plaintiff was held guilty of contributory neg-

ligence, as a matter of law, but it was because, at approximately one hundred feet from the crossing, he could see along the railway track for a distance of six hundred feet, and seeing a train approaching, he attempted to cross the track ahead of it.

In *Cable v. Spokane & Inland Empire R. Co.*, 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224, the driver of an open buggy approaching a railway was held guilty of contributory negligence as a matter of law. In that case it appears that he knew that the train was approaching and that it usually ran at high speed at that point.

In *Bowden v. Walla Walla Valley R. Co.*, 79 Wash. 184, 140 Pac. 549, the driver of an automobile approaching a railway crossing was held guilty of contributory negligence as a matter of law. From a point one hundred feet from the crossing, he could see a train upon the railway two hundred feet away, and from a point forty feet from the crossing, he could have seen a train at least three hundred feet away. He proceeded without using his senses, which would have plainly revealed his danger, and he could have stopped the automobile before reaching the track.

In *Aldredge v. Oregon-Washington R. R. & Nav. Co.*, 79 Wash. 349, 140 Pac. 550, the plaintiff was held guilty of contributory negligence because he apparently took no precaution whatever to ascertain that the train was approaching. Just before turning onto the crossing, he was driving parallel to the railway track, in plain view of an approaching train, though apparently his view was obstructed by some bushes in some degree when he was close to the track.

In *Cole v. Northern Pac. R. Co.*, 82 Wash. 322, 144 Pac. 34, a boy riding a bicycle was held guilty of contributory negligence, as a matter of law, because he approached a double track railway and, slowing up to await the passing of a train in one direction, immediately proceeded without looking and was struck by a train from the opposite direction.

In *Skaala v. Twin Falls Logging Co.*, 82 Wash. 679, 144
Pac. 897, a pedestrian was held guilty of contributory neg-
ligence in crossing railway tracks under such circumstances
as rendered it almost too plain for argument that he did not
use his senses in any degree looking to his own protection.
Of course, a pedestrian can so control his actions by using
proper caution as to render himself safe though he be very
close to a moving train.

In *Allison v. Chicago, Milwaukee & St. Paul R. Co.*, 83
Wash. 591, 145 Pac. 608, the plaintiff, driving an automo-
bile upon a crossing at night, was held guilty of contributory
negligence, as a matter of law, because he ran into a slowly
moving train which his own headlights would have plainly
revealed had he used his sense of sight.

In *McKinney v. Port Townsend & Puget Sound R. Co.*, 91
Wash. 387, 158 Pac. 107, it was held that an automobile
driver was guilty of contributory negligence, as a matter of
law, upon approaching a railway track, the evidence render-
ing it certain that his automobile was running under such
conditions that it could have been stopped within three to
seven feet, and he came within plain view of the track and the
approaching train within a distance of fifteen or twenty feet
of the crossing. That case was not finally disposed of by
that decision, but was remanded for new trial because of
the failure of the trial court to properly submit to the jury
the question of last clear chance as bearing upon the liability
of the company.

In *Blackburn v. Southern Pac. R. Co.*, 34 Ore. 215, 55
Pac. 225, we have a case of contributory negligence, and so
decided, as a matter of law, where the deceased was familiar
with the crossing and aware of the fact that it was about time
for the train to pass, and he proceeded without stopping to
look or listen. That case, we think, can be distinguished
from the one before us by the fact that deceased knew it was
about time for a train to pass and there was not present any
automatic electric bell or gong for the purpose of giving

warning of the approach of trains. In other words, there was nothing present there to suggest to the deceased that there was no train approaching, but, on the contrary, he knew it was about time for one to pass.

In *Griffin v. San Pedro, L. A. & S. L. R. Co.*, 170 Cal. 772, 151 Pac. 282, L. R. A. 1916A 842, an automobile driver was held guilty of contributory negligence, as a matter of law, in approaching a crossing without stopping to look and listen. He stopped about thirty-five feet from the track, where obstructions made it impossible for him to see the approaching train, and hearing no noise and seeing no smoke, he proceeded. Had he driven within seventeen feet of the track and stopped his machine he could have seen the approaching train. There was no gong present to suggest to him by its ringing or silence what the then probability of danger was. Two of the justices dissented, they being of the opinion that plaintiff could not be held guilty of contributory negligence as a matter of law.

The decision in *Chicago, R. I. & P. R. Co. v. Crisman*, 19 Colo. 30, 34 Pac. 286, cited and relied upon by counsel for appellant, seems to make some general observations lending support to their contention. It was not, however, there decided, as a matter of law, that plaintiff was guilty of contributory negligence, the case being remanded for new trial because of error in instructions. The observations made in the opinion, however, do suggest the thought that the extent to which one approaching a railway crossing must stop, look and listen is not always capable of exact measurement.

We are of the opinion that it cannot be held, as a matter of law, that respondent was guilty of contributory negligence, and that the trial court properly left that question to the jury.

The judgment is affirmed.

ELLIS, C. J., MOUNT, FULLERTON, and HOLCOMB, JJ., concur.