[No. 16403. Department Two. September 26, 1921.]

WILLIAM PETRY, *Appellant,* v. WALKER D. HINES *et al., Respondents.*[1]

RAILROADS (64, 71)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether one driving an automobile towards a country railway crossing at from eight to ten miles an hour could have seen or heard a rapidly approaching passenger train coming through a cut close to the crossing, presents a question for the jury, where there was testimony that no whistle was sounded or bell rung nor any noise of the train noticeable, and that plaintiff kept a sharp lookout from the time he was within fifty feet of the crossing, but did not see the train until within about ten feet of the track, when it was too late to stop his car short of the nearest rail of the track.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered August 27, 1920, in favor of the defendants, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for damages to an automobile struck by a train. Reversed.

*C. D. Cunningham* and *P. M. Troy,* for appellant.

*Geo. W. Korte* and *Frank C. Owings,* for respondents.

[1]Reported in 200 Pac. 1077.

BRIDGES, J.—By this action the plaintiff sought to recover for damages to his Ford automobile, which· damages were the result of the automobile being struck by one of defendant's trains at a crossing of the railroad tracks by the county road. The trial court denied both defendant's motion for nonsuit and for a directed verdict. There was a verdict in favor of the plaintiff in the sum of $400. The trial court sustained the defendant's motion for judgment notwithstanding the verdict, because it was of the belief that the plaintiff had been guilty of contributory negligence, and entered a judgment of dismissal, from which the plaintiff has appealed. Practically the sole question argued here is whether the court should say, as a matter of law, that the plaintiff was guilty of contributory negligence. To decide this question the facts must be looked on in the light most favorable for plaintiff.

On the 29th of June, 1919, the appellant was driving his Ford automobile easterly along the public roads from Centralia to Little Rock. At one point the highway crosses at grade the railroad tracks of the Chicago, Milwaukee & St. Paul Railway, which railroad, at the time of the injury, was being operated by the respondent Hines. To the west of the crossing it runs for some distance south of, and parallel to, the railroad. It then makes a sharp turn to the north in order to cross the railroad tracks. This turn is some fifty feet from the tracks. The railroad, immediately to the east of the crossing, is in a slight cut. About four hundred feet east of the crossing the track makes a curve. The right of way on the south side of the railroad tracks, where they come up to the crossing, is covered with shrubs and small trees.

It was between four and five o'clock in the afternoon that the appellant approached the crossing. As he made the turn, some fifty or sixty feet away from

the crossing, both he and another man, who was riding with him in the front seat, began and continued to look and listen for the approach of trains. When the appellant was within about ten feet of the nearest rail, he first saw the train approaching from the east, at a rate of speed estimated by him, as well as his companion, to be some forty-five to fifty miles an hour. He had been approaching the crossing with his automobile at the rate of about eight or ten miles an hour, and as soon as he saw the train, he realized his danger and stopped his car as soon as he could. He succeeded in stopping it before the front wheels had gone over the nearest rail. At that time the engine of the train was about one hundred and fifty feet from the crossing. He did not have time to either cross ahead of the train or to back out of its way. The steps of the engine hit the front part of his car, turned it around, and some other portion of the front part of the train then hit the rear of the automobile and very badly damaged it. The appellant testified that he neither heard nor saw the train at any time before reaching a point about ten feet from the track, although he was constantly looking and listening for it, and that the train did not blow any whistle, ring any bell, or give other warning of its approach. He further testified that, after the accident, he viewed the premises and learned that one sitting in an automobile would not be able to see the approach of the train from the east until he was within approximately ten feet of the track, but that at a point about thirty feet from the track, and at another point about twelve or fourteen feet from the track, it was possible to see the top of the train by looking through the brush and shrubbery on the right of way.

The testimony of respondent's civil engineer, who later examined the premises, was not very materially

different from that of the appellant, in so far as the
local surroundings were concerned. He testified that
one standing between the rails at the crossing could see
the approach of the train about four hundred feet to
the east; beyond that it could not be seen because of a
curve in the track and certain obstructions. He further
testified that, at a point thirteen feet from the center
of the crossing, there was an unobstructed view of an
approaching train two hundred ninety-two feet down
the track to the east of the crossing, and that at a
point twenty feet from the center of the crossing, one
standing in the highway could see about one foot of
the top of a twelve-foot level, located between the
tracks two hundred twenty-two feet east of the cross-
ing, and that at a point thirty feet from the center of
the crossing, a similar view of the level could be ob-
tained when it was located two hundred feet east of
the crossing, and that at a point in the highway about
fifty feet from the center of the crossing, a similar
view of the level could be had, located at a point one
hundred eighty feet to the east of the crossing.

Under this testimony, we think the court was in
error in sustaining respondent's motion for judgment
notwithstanding the verdict.

The rule is that the driver of an automobile, ap-
proaching a crossing such as the one here, must make
a reasonable use of his senses to guard his own safety,
and failure so to do is negligence.

If the testimony of the appellant is to be believed,
he was approaching this crossing at about ten miles
an hour. He was constantly keeping a sharp lookout
for the approach of trains from the time he was within
fifty feet or more of the crossing. His hearing and
his eyesight were good. Notwithstanding the fact that
he kept a constant watch for any approaching train,
he did not see it or hear it in time to stop before reach-

ing the track. There is nothing, either in the appellant's testimony or in the physical facts which would show that the appellant, had he been in the exercise of ordinary care, should and would have seen or heard the approach of the train in time to avoid the accident. It is true he says that, at a point some thirty feet away from the crossing, he might possibly have seen the top of the train, had it at that time been at the point on the tracks where he could have seen it; but inasmuch as the train was going some four or five times as fast as he was, it is not at all improbable that, when he looked for the train at the point thirty feet from the crossing, it was too far down the track to be within his view. But we cannot say he was guilty of negligence in failing to see that which it was possible for him to see. That is within the province of the jury. It is also true that the appellant's car must have been making some noise and interfered somewhat with his hearing the rumble of the train. But that circumstance will not permit us to hold, as a matter of law, that he should have stopped and listened. Unquestionably there are circumstances and conditions which would require a person, exercising ordinary care, to stop his automobile for the purpose of listening for approaching trains, but ordinarily, whether one must so do is a question for the jury and not for the court. *Stewart v. Northern Pac. R. Co.*, 96 Wash. 486, 165 Pac. 377; *Kent v. Walla Walla Valley R. Co.*, 108 Wash. 251, 183 Pac. 87.

We think the conclusion to which we have come is well within many of our previous decisions, of which the following are part: *McKinney v. Port Townsend etc. R. Co.*, 91 Wash. 387, 158 Pac. 107; *Smith v. Inland Empire R. Co.*, 114 Wash. 441, 195 Pac. 236; *Hubenthal v. Spokane & Inland Empire R. Co.*, 97 Wash. 581, 166 Pac. 797.

Respondent contends that, if our position here seems to be supported by some of our cases, it is directly opposed by two of our more recent decisions. It particularly calls attention to the cases of *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848; *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512. We do not think either of those cases is a departure from our previous holdings, nor is either of them in opposition to the view we here take.

The *Mouso* case was a railroad crossing accident. The facts were that the driver of a motor truck was intending to back his truck over the railroad tracks. When twenty-five feet from the nearest rail, the driver could see without any obstruction along the track whence the train was coming, a distance of nearly eighty feet, and when he was twenty feet from the nearest rail, he had an unobstructed view of the track for a distance of nearly one hundred feet, and when he was fifteen feet away, he had an unobstructed view up the track of more than one hundred sixty feet. The truck was moving very slowly and could be stopped within a very few feet. The driver of the truck testified that he kept looking at the track as he was backing but did not, and was unable, to see the approaching train because of some obstructions. Under these facts, after stating the usual rule with reference to the duties of the driver of the truck, we said:

"Did the driver of the truck perform this duty? He says he did. But his testimony in this respect is denied and overcome by the physical facts. The uncontradicted testimony of the civil engineer, and the map which he prepared, show beyond cavil that, had the driver looked when he was a distance of twenty-five feet from the track, he could have seen the approaching train, which must have then been within the seventy-seven feet of clear view, and would then have had ample space within which to make the stop, which actually required six or eight feet. The physical facts

show that the driver could not have looked until he was approximately fifteen feet from the track and the rear of his truck within a foot or two of the first rail . . ." *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848.

There are no physical facts in this case which show conclusively that the appellant had an unobstructed view of the track, or that he must, had he looked, have seen the approaching train before he actually did see it. The very most that can be said of appellant's testimony in this regard is that he might have seen the top of the train at a point some distance farther away from the crossing than he actually saw it. But there is no showing that, had the appellant used ordinary care in watching for the train, he must have seen its approach in time to have avoided the collision. What was said by Judge Mount, writing the opinion in the case of *Smith v. Inland Empire R. Co., supra,* is pertinent here:

"But it is said by the appellant that, if Mr. Smith had looked at certain places within one hundred and seventy-five feet or less from the crossing, he must have seen the train. It is no doubt possible that if he had looked at certain places he might have seen the train. The train, as we have said, was coasting down a two per cent grade in a cut. Mr. Smith was approaching the crossing, also in a cut. At best, he could have seen but a small portion of the tops of the cars. If he had stopped at certain points before attempting to make the crossing, the railway train may have been some distance away. He may not have seen it though he had looked carefully. He may have stopped his automobile, loaded as it was, at a point where the train would have been obscured by the rocks and bushes outside of the right of way."

The facts of the *Benedict* case, *supra,* are quite similar to those of the *Mouso* case. There the plaintiff had an unobstructed view of the train in plenty of time to

have avoided the collision. The plain and unobstructed views which were open to the plaintiffs in each the *Mouso* and the *Benedict* cases are important distinguishing features from the case at bar.

The judgment is reversed, and the cause remanded to the lower court to pass upon respondent's motion for new trial, if one were made, and if not, to enter judgment upon the verdict.

MITCHELL, TOLMAN, and MAIN, JJ., concur.