[No. 16773.   Department Two.   May 10, 1922.]

## ALFRED J. BECKWITH, *Respondent*, v. SPOKANE INTER-NATIONAL RAILWAY COMPANY, *Appellant*.[1]

RAILROADS (67)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLI-GENCE—DUTY TO STOP, LOOK AND LISTEN—OBSTRUCTED VIEW. The driver of an automobile is guilty of contributory negligence, as a matter of law, in driving upon a railroad crossing with his view of an approaching train obstructed by a standing train, where he could have stopped his car within four or five feet and attempted to cross the track without first looking at the last place where he could have seen the oncoming train.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered April 5, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by the driver of an automobile struck by a railway train. Reversed.

*Allen, Winston & Allen,* for appellant.

*F. A. McMaster,* for respondent.

HOLCOMB, J.—The accident out of which this cause arose occurred in Spokane, at about 5 o'clock p. m., on September 3, 1920, on the crossing of Greene street at grade over the tracks of appellant.

The facts which were resolved in favor of respondent are substantially as follows: Respondent was employed at a plant located about three blocks east and three blocks south of the crossing of Greene street where the accident occurred. He was driving a Ford automobile, with the top up, and had a companion with him in the front seat. The tracks of the Inland Interurban Railway and those of appellant parallel each other for some distance east and west of the crossing,

[1]Reported in 206 Pac. 921.

there being five tracks of the interurban railway running east and west, and about forty-five feet distant from the northern track the first or main track of appellant is reached, and then two side tracks north of the main track. On the first side track just north of the main track of appellant stood a train of twenty or twenty-five box cars. The west end of this string of cars was twenty-five or thirty feet from the crossing. The traveled way of the crossing was of plank, about fourteen feet wide. A switch engine pulling two cars was running west towards this crossing on the first track north of the side track containing the box cars, and as respondent was traveling north these cars, he asserts, hid from his view the engine and cars. When respondent was within three or four feet of the nearest rail of the track on which the engine was running, he heard a bell, and looking up saw the engine about fifteen feet from him. He thought he could not stop his car in time to avoid being hit, but by accelerating his engine he thought he could get over the track, and attempted to do so, but the engine hit the rear end of his automobile and dragged it about sixty feet. He approached the track on which he was struck at the rate of eight or ten miles an hour. The switch engine was running at the rate of ten to fifteen miles an hour. Respondent testified that, as he approached the Inland tracks, he looked and listened for approaching trains, and again when approaching appellant's tracks, about forty feet away, and again when crossing the main line and the track on which the box cars were standing, and that he did not see or hear the approach of any train, or the sound of any bell or alarm of any kind, and that the first thing he heard was the bell, when he looked up and saw the engine fifteen feet away. His companion testified to practically the same thing, except that he

stated that in his judgment the automobile was about three feet from the track.

Approaching the Inland tracks from the south, about 300 feet south of the south line of their tracks, there is a slight rise of the ground which makes the ground about twenty feet higher than the level of the crossing. From this high ground respondent had a good view of the tracks on each side of the crossing, as there was nothing to obstruct his view. Respondent was driving his car between neutral and high, which caused it to make some noise. The brakes on his car were in good condition. The road was dry and he could stop his car in about four or five feet. If he knew he had to stop his car at a certain point he could stop it in about five feet. Respondent had lived in the neighborhood of the crossing for some time and had passed over the tracks at the same times almost daily. He knew there was switching going on every evening at the time of the accident. There was nothing to interfere with his seeing anything on any of the tracks for a half mile west of the crossing, nor to the east for the same distance, except the box cars which stood on the second siding. He had before this time heard trains when they were switching. Respondent identified certain pictures taken at the crossing about four or five months after the accident, and stated that the engine shown in the pictures is of substantially the same type, and the box cars substantially the same character as those he saw at the time of the accident. He, however, places the box cars in the picture at about twice as far east of the crossing as they were on the day of the accident.

The pictures in evidence show that, when the engine was either standing still or moving behind the box cars, either the smoke from the engine or the steam from the exhaust was visible and could be seen by one approaching the crossing.

Appellant unsuccessfully moved for a directed verdict, for judgment n. o. v., and for a new trial. The case was submitted to the jury and its verdict sustained on the testimony that no bell was rung.

No questions are urged on this appeal as to the correctness of the court's instructions or as to the reception of evidence. The only question presented is whether the respondent was guilty of contributory negligence. Appellant contends that respondent did not look where he should have looked, and did not listen where he should have listened, and that the physical facts are against him and cannot be contradicted.

Ordinarily, it is true, the contributory negligence of a plaintiff is a jury question, and we have often held that the question of contributory negligence would not be taken from the jury and decided as a matter of law unless the omission or commission of the acts shown were so palpably negligent that the minds of reasonable men ought not to differ concerning them.

There is no question in this case of the speed of the engine, or of the engine silently coasting. Appellant therefor contends that the case falls within the rule of our decisions in *Mouso v. Bellingham & Nor. R. Co.*, 106 Wash. 299, 179 Pac. 848; *McEvilla v. Puget Sound Tr., L. & P. Co.*, 95 Wash. 657, 164 Pac. 193; *Allison v. Chicago, Milwaukee & St. Paul R. Co.*, 83 Wash. 591, 145 Pac. 608; *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; *Golay v. Northern Pac. R. Co.*, 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512; and the cases of *Robison v. Oregon-Washington R. & Nav. Co.*, 90 Ore. 490, 176 Pac. 594; *Rayhill v. Southern Pac. Co.*, 35 Cal. App. 231, 169 Pac. 718; and *Griswold v. Pacific Elec. R. Co.*, 45 Cal. 81, 187 Pac. 65.

On the contrary, respondent asserts that the facts in the case bring it within the rule of our decisions in

*Smith v. Inland Empire R. Co.*, 114 Wash. 441, 195 Pac. 236; *Swanson v. Puget Sound Elec. R.*, 118 Wash. 4, 202 Pac. 264; *Petry v. Hines,* 117 Wash. 175, 200 Pac. 1077, and *Ziomko v. Puget Sound Elec. R.*, 112 Wash. 426, 192 Pac. 1009.

The cases cited by respondent are principally cases where drivers of vehicles on country roads which had some obstruction which concealed the view at the critical point, and where warnings or signals were not given and the driver of the vehicle took such precautions and used such care as an ordinarily prudent man under such circumstances should use, or at least the circumstances were such that the facts in each case as to the plaintiff's care and prudence or contributory negligence were for the jury. In the *Smith* case, *supra,* the train causing the injury was an electric train coasting down a slight hill very silently, and more or less concealed behind the walls of a cut and some brush and shrubbery. In the *Swanson* case, *supra,* the accident occurred at night on a cloudy night, and there was some confusion of lights along the rights of way of three railways, or might have been, to the driver, and he had been in the habit and had the right to rely upon an electric alarm crossing bell, which, according to the evidence introduced in the case, did not work at that time. In the *Petry* case, *supra,* the evidence showed that the road on which the vehicle was traveling made a sharp turn to the north to cross the railroad tracks about fifty feet from the track. Immediately to the east of the crossing the railroad is in a slight cut. When the occupants of the vehicle were about fifty feet from the crossing they began and continued to look and listen for the approach of trains. When the vehicle was about ten feet distant from the nearest rail they first saw the train approaching from the east at a rate of speed estimated by the occupants of the vehicle at 45 to 50 miles an

hour. The driver testified that he neither saw nor heard the train at any time before reaching a point about ten feet from the track, although he was constantly looking and listening for it, and that the train did not blow any whistle, ring any bell, or give any warning of its approach. We think the facts recited from those cases distinguish them from the case at bar.

This was a steam railroad crossing and a main line track and switching yard. Respondent was well aware of the nature of this crossing, knew that there were a number of tracks of two different railways being operated there; knew that switching was usually carried on by appellant at that time of the day when he was using the crossing; and knew that if there were cars on one track they might obstruct the view of a moving train on another track. Since he could not be seen by the engine crew, and since his car could have been stopped within four or five feet, he certainly took a chance when he attempted to cross the track without looking, at the last place where looking was effective, to see if there was any moving train on the hidden track.

The facts are similar to those in *Golay v. Northern Pac. R. Co., supra,* where box cars on a steam railway siding fifty feet from the crossing obstructed the view, except that in that case the speed of the train was found to exceed the speed permitted by a town ordinance, while here it did not. In that case plaintiff "listened where it was difficult to hear, and did not look where he could first have seen."

In *Benedict v. Hines, supra,* where box cars on a siding to some extent obstructed the view of the main tracks, we said that "the caution required was in exact proportion to the distance they were situated from the highway"—in other words, in exact proportion to the danger therefrom—and held that the deceased had not

exercised that necessary caution. That precisely fits the case in hand.

"The duty to look and listen before crossing requires, especially where physical conditions interfere with the free use of vision or hearing, that the traveler should exercise care to select a position from which an effective observation can be made, . . ." 22 R. C. L. 1030.

"At an obstructed crossing it is the duty of a traveler to exercise a greater degree of care and caution than is incumbent upon him usually, and common prudence requires him to approach at such speed that when an approaching train may be seen, he may be able to stop and allow it to pass." 22 R. C. L. 1018-19.

The above states the principle of our decisions in the cases cited by appellant from this court and from other jurisdictions.

We conclude, therefore, that the contributory negligence of respondent was conclusively established and that he cannot recover.

Judgment reversed.

PARKER, C. J., HOVEY, MACKINTOSH, and MAIN, JJ., concur.