[No. 14957.   Department One.   January 9, 1919.]

CARL BRANDT, *as Administrator etc., Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al.,* *Appellants.*[1]

RAILROADS (66, 67, 71)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—DUTY—OBSTRUCTED VIEW—QUESTION FOR JURY. Deceased was not guilty of contributory negligence, as a matter of law, in driving an auto truck upon a railroad crossing, upon the theory that a person who has exercised some degree of care in apprising himself of the approach of a train has a right to assume that any approaching train is operating at a lawful speed, and the question is for the jury, where it appears that his view on approaching was obstructed and that he looked first in one direction and then in the other, failing to see the train, and there was evidence from which the jury may have found that he might have seen the approaching train if it had been running at a lawful rate of speed, or had warning been given, and that no bell or whistle was sounded until it was too late for him to stop the auto. .

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered April 27, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellants.

*Forney & Ponder, C. D. Cunningham,* and *J. H. Jahnke,* for respondent.

[1]Reported in 177 Pac. 806; 181 Pac. 682.

TOLMAN, J.—This action was brought to recover damages for the death of A. Forstrom, who was killed at the crossing of Summa street and the main line of appellant's railroad, in the city of Centralia, on August 13, 1917. From a verdict and judgment in favor of the respondent, appellant appeals, raising the single question that the evidence was insufficient to go to the jury.

The deceased, Forstrom, owned a dairy farm in the country, and hauled his own and his neighbor's milk to the condensery. On the day of the accident, and for some two months preceding, he had used an auto truck for this purpose. On the morning of the day in question, accompanied by his nine-year-old son, he had driven to the condensery with his milk, and was returning with the truck loaded with empty milk cans. He stopped at the warehouse of the Standard Oil Company, a short distance east of the crossing where the accident afterwards occurred, for a few moments, and backing out from there onto the street, proceeded westward at about six miles per hour. The warehouse and a box car standing on the spur track obstructed his view of the main line of appellant's railroad toward the south, from which direction the train was coming, until after he crossed the spur track, which was distant some thirty-six and one-half feet from the nearest rail of the north-bound main line track. At about the time the spur track was passed, the boy testified that he looked south, but could see nothing of an approaching train because of an embankment some eight feet high, overgrown with grass and weeds, which lay east of the main line and began about 100 to 120 feet south of the crossing and extended southerly a distance of 175 to 180 feet, and hearing no train, he turned in the other direction to look for a

train from the north, so that he failed to see or hear the approaching train until it was too late to avoid the accident.

Another eyewitness testified that, shortly after crossing the spur, Forstrom turned his head toward the south as though looking for an approaching train, and then continued his course with his speed unchecked until an instant before the accident. Several witnesses testified to obstructions rendering it difficult, if not impossible, for one pursuing the course deceased was following to see an approaching train until it was within a short distance of the crossing.

There was a sharp conflict in the testimony as to whether warning was given of the approaching train, by sounding either whistle or bell, until it was too late to enable the deceased to avoid the accident, though it appears that the engine emitted considerable smoke and the train made considerable noise as it approached. The train admittedly was late and running a few minutes behind its regular schedule time. It is admitted that the train was running at a speed of thirty-five to forty miles an hour at the instant of the collision with the truck driven by the deceased; and it is also admitted that, by ordinance, the speed of trains is limited to ten miles per hour within the corporate boundaries of the city of Centralia, and that the center line of the street, where the accident occurred, made the southerly boundary of said city. There was evidence that the truck as loaded and going at a speed of six miles per hour could be stopped by an ordinarily skillful and careful driver in "probably twenty feet."

Under these conditions, deceased approached the crossing, apparently unconscious of the approach of the train until it was somewhere between fifty and 150

feet from the crossing, when the engineer gave the alarm signal by several sharp blasts from the whistle, and at the same instant applied the brakes. Deceased, also at that instant, apparently threw out his clutch, applied his brakes and brought his truck to a stop, with the front wheels upon or just over the first rail, and seems to have attempted to reverse for the purpose of backing off the track, then realizing that he could not succeed in that attempt, threw up his hands and cried, "Whoa! Whoa!" just as the engine was upon him.

It is a familiar rule in this state that, where the evidence and the inferences to be deduced therefrom are such that reasonable men may arrive at different conclusions, the question of the contributory negligence of the deceased, like that of the negligence of the defendant, is for the jury to determine. And in passing upon the question here presented, we must accept as true that view of the evidence which is most favorable to the respondent. The obstructions to the view of one approaching the track upon the highway were largely placed there by the appellant company, and were as well known to it as to the deceased. The jury may, under the evidence, have determined that the deceased, because of such obstructions, had a limited view only, but could, from the point at which the evidence indicates that he or his son looked, have seen an approaching train if, running at a reasonable or lawful rate of speed, it was within the danger zone, for manifestly the danger zone would increase in extent as the speed of the oncoming train increased, and the extent of the danger zone, if the train were traveling ten, fifteen, or even twenty miles per hour, would be very materially less than under the facts shown here, which were that, after the application of the

brakes for a distance of perhaps 150 feet, the train was still going at a speed of thirty-five to forty miles per hour at the time of the impact.

Under the evidence, also, the jury may have found that no warning was given of the approach of the train, except the usual sounds and sights occasioned by its operation. And it being admitted that it was not running on the usual schedule, might not the jurors, as reasonable men, conclude that these were the proximate causes of the accident, and that, under such conditions, the deceased, notwithstanding the noise caused by the operation of his truck loaded with empty milk cans may have interfered with his hearing, was acting as a reasonably prudent man when he relied upon his limited view of the track and the absence of the sound of bell or whistle?

That we, sitting as jurors, might have found otherwise is no answer to the fact that there was substantial evidence before the jury to the effect indicated. And the jury having believed that evidence, rather than that which contradicted it, we are powerless to interfere. This subject has been recently considered in the case of *Golay v. Northern Pac. R. Co.*, ante p. 132, 177 Pac. 804, 181 Pac. 700, and we think the facts in this case bring it within the second rule there referred to, which is:

"'The second line [of decisions] represents those cases where the pedestrian or driver of a vehicle has approached the railroad track and has exercised some degree of care and caution in attempting to apprise himself of the approach of a car or train, and in those cases it has been held that, when he has looked or listened and has not seen nor heard the car or train approaching, or when he has looked and has seen the car or train approaching and has not been able, by reasonable care, to determine the speed of its approach, he has the right then to assume that the rail-

road company will not place a car or train within striking distance of him by operating such car or train at an unlawful rate of speed. There is then presented a question of fact for the jury to determine whether he has exercised a reasonable degree of care and caution for the purpose of his self-protection. This line of decisions is represented by the following cases: *Averbuch v. Great Northern R. Co.*, 55 Wash. 633, 104 Pac. 1103; *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351; *Merwin v. Northern Pac. R. Co.*, 68 Wash. 617, 123 Pac. 1019.''

The cases there cited from this court amply bear out the rule as stated, and after an exhaustive examination of the evidence in this case, we are satisfied that it comes within the rule referred to, and was properly submitted to the jury.

The judgment will be affirmed.

MAIN, C. J., MACKINTOSH, CHADWICK, and MITCHELL, JJ., concur.

## ON REHEARING.

[*En Banc.* May 31, 1919.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court still adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment is affirmed.