[No. 15648.  Department One.  March 20, 1920.]

LORA E. BENEDICT, *as Administratrix etc., Respondent,*
v. WALKER D. HINES *et al., Appellants.*[1]

RAILROADS (66)—ACCIDENT AT CROSSINGS—CONTRIBUTORY NEGLI-
GENCE—FAILURE TO SLOW DOWN.  The driver of an automobile, killed
at a railroad crossing when struck by a rapidly moving passenger
train, was guilty of contributory negligence, as a matter of law,
where main line double track railroads bearing the traffic of three
companies were straight for miles, the deceased was familiar with
the situation, he had an unobstructed view for one thousand feet
while approaching the crossing on a parallel highway, and the
locomotive approaching from the opposite direction emitted large
volumes of smoke plainly seen by others, but deceased started across
the tracks from behind box cars on a side track without stopping or
reducing his speed.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered July 14, 1919,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action for wrongful death and damages
resulting from the collision of an automobile and a
railway train.  Reversed.

*F. V. Brown* and *A. J. Laughon,* for appellants.

*C. D. Cunningham* and *Forney & Ponder,* for re-
spondent.

MITCHELL, J.—This action was brought by plaintiff,
as administratrix of the estate of her deceased hus-
band, for the benefit of herself and children, to recover
damages for the death of the husband and father,
Charles A. Benedict, and on behalf of the estate for
the value of an automobile destroyed; the death of
the deceased and the destruction of the automobile
having been occasioned by a collision of the automo-
bile, driven by the deceased, with a passenger train

[1]Reported in 188 Pac. 512.

operated by defendants. The accident occurred at a highway grade crossing near Tenino, Washington. The complaint charged the director general of railroads with negligence in maintaining a line of telegraph, telephone, and other poles on the westerly side of the railroad tracks south of the crossing in such manner as to obstruct a traveler's view of trains approaching from the south; that he permitted box cars to remain on the railway tracks for a considerable distance extending to within a few feet of the crossing, on both sides thereof; that he failed to keep a flagman or watchman at the crossing, and failed to maintain thereat a gong or other similar device to warn the public of approaching trains; and also charged both defendants, the director general of railroads and the engineer of the train, with negligence in operating the train at a high and dangerous rate of speed without warning of its approach by whistle, bell, or otherwise. The answer denied all allegations of negligence charged in the complaint and affirmatively alleged that the collision and damage were caused by the contributory negligence of the deceased. The allegation of contributory negligence was denied by a reply. The case was tried to a jury. At the close of the plaintiff's case, defendants' motion for a nonsuit was denied. At the close of all the evidence, defendants moved for a judgment for the defendants, or, in the alternative, for a directed verdict in their favor. The jury returned a verdict for the plaintiff, whereupon defendants moved for judgment notwithstanding the verdict. From a judgment upon the verdict, defendants have appealed.

At the time of the accident, all trains of the Northern Pacific Railway Company, the Oregon-Washington Railroad & Navigation Company, and the Great Northern Railway Company, running between Portland and Puget Sound cities, were being operated over and

upon a double main line track system under the management of appellant Walker D. Hines, as director general of railroads. At a point about half a mile south of the town limits of Tenino, the railway tracks were crossed at grade and at right angles by a highway which was the principal thoroughfare in that vicinity. At the crossing there were four railway tracks, running north and south — two main line tracks between two side tracks, placed the ordinary distance, or thirteen feet, apart, from center to center. The west main line track was used for south-bound trains, the other main line track for north-bound trains; while the side tracks were used generally for switching purposes and the temporary placement of box cars. Going south from Tenino, the highway closely parallels the railway tracks on the west side down to the crossing, thence closely parallels the railway tracks on the east side for a considerable distance. Sharp curves and a gradual rise of 4.9 feet to the railway grade mark the course and elevation of the highway approaches on both sides of the crossing. The thirty-foot roadway over the railway tracks was planked, sixteen feet wide; the approaches were gravel surfaced.

On the west side-track, there were box cars north and south of the crossing, the nearest on each side being variously estimated from near by to about one hundred feet from the highway. From a point approximately one thousand feet north of the crossing, and for more than two miles to the south of it, the railroad bed maintained the same elevation and the main line tracks were straight—the side tracks intersected the main tracks about a quarter of a mile south of the crossing. The deceased was familiar with the crossing. He had lived seventeen years in the vicinity. Tenino was his trading place, and for the last ten years in going to and returning from town he passed over the

crossing. Shortly before five o'clock on the afternoon of January 2, 1919, when it was still light enough to see the train half a mile distant, the deceased, riding alone in a Ford touring car, drove south along the highway from Tenino. He passed over the west side-track, between the box cars to the north and to the south of the crossing, crossed the main track for south-bound traffic, and was struck about the center of the automobile on the third or north-bound main track by a Great Northern passenger train running at thirty-five to forty miles an hour, on schedule time from Portland to Tacoma. The automobile was wrecked and its driver killed by the force of the collision.

The testimony is clear that, from a point about one thousand feet north of the crossing to the point of the accident, the deceased continued his course with un-altered speed until at or an instant before the collision. The witnesses gave different estimates of his continuous speed, varying from ten to fifteen miles an hour. Several witnesses situated near, or within a few hundred yards of the crossing, some on either side of the railroad, heard or saw, or both heard and saw, the train before the deceased entered the zone of danger. The train moved at its usual and lawful speed. There is a sharp conflict in the evidence as to whether or not the train had given the crossing or station whistle; for present purposes, the assumption is against appellants. On nearing the crossing, upon observing the deceased come into view through the string of box cars, the engineer promptly gave alarm whistles and instantly set the emergency brakes, too late, however, to avoid the collision.

Upon appellants' contention, the controlling question in this case is, whether the evidence shows contributory negligence, as a matter of law. A traveler on a public highway approaching a railway crossing

cannot impose upon the railway company all the caution needed to prevent accidents. With knowledge that the railway company has the right of way and cannot so readily stop its trains, the well settled rule imposes upon the traveler the duty to use all means a reasonably prudent person would, under the existing circumstances, to avoid a collision. In this case, it must be taken for granted the decedent knew this double track railroad at that time bore the extensive traffic of three important railway systems.

"The driver of an automobile, approaching such a crossing as the one in this case, must make reasonable use of his senses to guard his own safety, and the failure to do so is negligence." *Bowden v. Walla Walla Valley R. Co.*, 79 Wash. 184, 140 Pac. 549.

There is no dispute as to the essential and controlling facts. Together with the physical facts disclosed by the oral evidence, photographs, and maps of the scene, they stand as a unit to convince one of the charge of contributory negligence, as a matter of law. Well understanding the amount of traffic and the danger of the crossing, the deceased proceeded at an even speed along the roadway and into the zone of danger, through the break in the string of box cars, without having his automobile under control, so as to check it, until it reached the third track; while some of the witnesses testify no slackening of its speed was noticed until the collision actually occurred. It was a case of taking a chance rather than exercise precaution.

Respondent claims the decedent could not see or hear the train because of the intervening box cars. The train consisted of a locomotive and nine standard coaches which, at the speed it was moving, necessarily made considerable noise. The smokestack of the locomotive emitted large quantities of smoke seen by others from different directions. To the extent the box cars

were an obstruction to the use of the senses of hearing and seeing, they were at the same time obvious, and together with the disadvantage for hearing caused by the noise of the automobile, accentuated the constant and lively suggestion of danger at the crossing. It was a situation that in common prudence demanded more caution than if the obstructions were less or non-existent, according to the familiar rule: "What would be due care under certain circumstances would not be due care under other and different circumstances." The same reason applies concerning the proximity of the box cars to the highway, as to one passing through them—the caution required was in exact proportion to the distance they were situated from the highway.

Respondent relies largely upon *Brandt v. Northern Pac. R. Co.,* 105 Wash. 138, 177 Pac. 806, 181 Pac. 682; *Kent v. Walla Walla Valley R. Co.,* 108 Wash. 251, 183 Pac. 87; and kindred cases. Those two cases were sufficiently similar as to the facts to take the same course. But they are not in point. In the *Kent* case, among other facts, there was a small service station near the railway track which would obstruct the view of a train approaching from the north, unless a person, on going to the crossing, went out of his course to overcome the obstruction. In the opinion, it was said of the person injured in the collision:

"The respondent testified that, as he approached the intersection, he looked in both directions and listened for the approach of a car. As he entered the intersection he swung to the left, so as to get a view back of the service station to the north to see if a car was approaching. Seeing none, he pulled upon the macadam in the center of Wallula avenue roadway, looking again to the south and to the north."

There is no such evidence in the present case. In principle this case falls within the rule announced and

followed in *Cable v. Spokane & Inland Empire R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; *Golay v. Northern Pac. R. Co.,* 105 Wash. 132, 177 Pac. 804, 181 Pac. 700, and *Clifford v. Oregon-Washington R. & Nav. Co.,* 90 Ore. 490, 176 Pac. 594; and, upon the authority of those cases and others cited or referred to therein, it must be held the deceased was guilty of contributory negligence, as a matter of law, and that therefore respondent's action fails.

Judgment reversed and cause remanded with direction to the superior court to dismiss the action.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.