[No. 16433. Department Two. September 22, 1921.]

JESSIE LOUGHNAN, *as Administratrix etc., Appellant,*
v. WALKER D. HINES, *as Director General of*
*Railroads, et al., Respondents.*[1]

RAILROADS (66)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—FAILURE TO CONTROL SPEED OF TRUCK. A truck driver, killed as the result of a collision with a passenger train on a country road crossing, was guilty of contributory negligence barring recovery for his death, where the evidence showed his familiarity with the crossing, its surroundings and attendant dangers; that there was a zone of safety before reaching the track of thirty to thirty-five feet, within which he could have seen the approaching train free of all obstruction to his view, and within which he could have stopped his truck; that he failed to heed a warning given by a section foreman, but continued his course without effort to control the speed of the truck until he had passed onto the crossing, when it was too late to do other than try to speed it up in an effort to save himself.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered June 26, 1920, upon granting a nonsuit, dismissing an action for wrongful death. Affirmed.

*C. D. Cunningham* and *Troy & Sturdevant,* for appellant.

*Geo. W. Korte* and *Frank C. Owings,* for respondents.

PARKER, C. J.—The plaintiff, Mrs. Loughnan, as administratrix of the estate of her deceased husband, Hulton Loughnan, commenced this action in the su-

[1]Reported in 200 Pac. 1086.

perior court, seeking recovery of damages for his death, alleged to have been caused by the negligent operation of a passenger train of the Chicago, Milwaukee & St. Paul Railway Company over the highway crossing at the flag station of Beaver creek, in Thurston county, while the operation of the lines of that railway company was in the hands of the defendant Hines as United States Director General of Railroads. A trial upon the merits—the court sitting with a jury —proceeded to the conclusion of the evidence introduced in behalf of the plaintiff, when counsel for the defendants moved the court to withdraw the case from the consideration of the jury and render judgment denying any relief to the plaintiff; upon the ground that the evidence then called for the conclusion, as a matter of law, that the plaintiff's deceased husband met his death as the result of his own negligence and want of care. This motion was granted, and a judgment rendered accordingly, from which the plaintiff has appealed to this court.

The so-called flag station of Beaver creek consists only of the intersection of a county highway, running north and south, with the main line of the Tacoma & Grays Harbor Division of the Chicago, Milwaukee & St. Paul Railway, running east and west; a spur track on the south side of the main line connecting therewith about five hundred feet east of the intersection; a lumber loading platform adjoining and on the south side of the spur track; and a small building or shelter adjoining and upon the north of the main-line track. Regular trains stop at this flag station only on signal, and there does not appear to be any occasion for or custom of the regular trains diminishing their speed when passing over this crossing, except when stopping for passengers or freight. Indeed, the crossing seems to be treated as any other country road crossing in so

far as the speed of trains passing over it is concerned. It is, however, a crossing much used by vehicles.

At the time the deceased lost his life, he had been employed for a month or more by a lumber company as a logging truck driver to haul logs over this country road and crossing from the woods north of the railway track to the company's sawmill, a short distance south of the railway track. He had, for a month or more previous, made an approximate average of five trips a day, driving the truck over the crossing approximately ten times a day; so, of course, he was well acquainted with the crossing, its surroundings and attendant dangers. The road approaches the railway track from the south on a slight up-grade. On the road, at a distance of eighty-five feet to the south of the crossing, one riding in an automobile, or truck such as the deceased was driving, can for a short space see a train on the railway to the east a distance of approximately six hundred and fifty feet from the crossing; but at the time in question, by reason of obstructions towards the east—particularly lumber on the platform and a freight car on the spur track—such traveler could not again see east along the track for any considerable distance until he would arrive at thirty feet south of the crossing, when he would have an unobstructed view of the track to the east for a distance of two hundred and thirty-two feet, looking past the north side of the freight car then on the spur; which view to the east would be proportionately extended as he continued to approach the crossing, there being no further obstruction to his view while passing over this thirty feet of the road. The railway track runs straight east for a long distance.

At the time in question, deceased approached the railway track from the south, driving the truck on his way to the woods for a load of logs for the mill. It

was a gasoline motor-driven truck of large size. He drove towards the crossing at an approximate uniform speed of ten miles per hour, without materially changing his speed until the front of the truck was almost upon the track, when, seeing a passenger train close upon him, approaching from the east at a high rate of speed, he suddenly increased the speed of the truck, apparently in an effort to pass over the track and escape injury; probably concluding that such was then his only possible chance of escape. The cab of the truck in which the deceased was sitting and driving came immediately upon the track just as the engine of the train came into collision with that part of the truck, resulting in his almost instant death. At the time in question, some section men had their hand-car off the main track, near the north side thereof, about fifty feet east of the crossing, in plain view of the deceased. They evidently were waiting for the passing of the train, it being the regular scheduled time therefor. Their foreman was there with them. At the same time, a witness, Taylor, was working on the loading platform to the south of the spur track. He was at least a hundred feet east and south of where the section foreman was with his men, and saw the train approaching, at the same time being aware of the approach of the deceased towards the crossing. Referring to the action of the section foreman immediately prior to the accident, Taylor testified as follows:

"Q. . . . What happened there with reference to the section man? A. I got up and hollered at the section man to flag the truck driver. Q. When was that you did it? A. Just before the accident and it was when the truck must have been within thirty or thirty-five feet from the rail and he got up and [said] 'Hey, you better stop there' and that is all that he said.

He stuck up one hand and said 'you better stop there.' Q. You heard him say those words from where you were on the platform? A. Yes. . . . Q. Where was the hand-car, if they had a hand-car? A. It was sitting back about fifty feet there from the crossing, right opposite the track. Q. What was the section foreman doing before you called to him? A. He was sitting on the hand-car or whatever it was. It was either a hand-car or a few ties. I am pretty sure it was a hand-car."

Another witness, who was on the platform with Taylor, heard him call to the section foreman, and also saw and heard the section foreman warn the deceased as he was approaching the crossing. Referring to the action of the deceased immediately prior to the accident, Taylor also testified as follows:

"Q. What did the truck driver do at that time? A. It looked as though he gave a slight glance up the track and kind of raised up in his seat. Q. Now at the time the truck driver gave the short glance up the track, where, approximately as near as you can tell, was the head of the locomotive? A. Well it was practically onto him. It was within a very few feet you might say."

This is in substance the whole of the evidence touching the question of what the deceased did in the way of looking for an approaching train as he approached the track. The foregoing facts are, of course, summarized from the evidence introduced in appellant's behalf, and we think it is as favorable a summary of the facts supporting her counsel's contentions as can be made from the evidence.

The principal ground of alleged negligence on the part of the operators of the train is failure to timely sound the whistle and ring the bell on approaching the crossing. We may concede, for present purposes, that the evidence tending to show negligent operation of the train was sufficient to carry that question

to the jury. The question of contributory negligence of the deceased being a proximate cause of his death, we think, however, must be decided against appellant as a matter of law, as it was decided by the trial judge, following our decision in *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512; in view of the deceased's knowledge of and familiarity with the crossing, its surroundings and attendant dangers; his having a zone of safety, before reaching the track, of thirty to thirty-five feet, within which he could have stopped his truck, in any event, by having it under proper control; his manifest lack of effort to properly control the speed of the truck until he had passed entirely over this zone of safety to the crossing, when it was too late to do other than try to speed it up and save himself; his manifest lack of effort to inform himself of the possible approach of a train until it was too late; his manifest want of care in failing to heed not only the inherent dangers of the crossing, but also the warning of the section foreman, given so plainly and under such circumstances that he must have noticed that warning, had he been exercising any sort of care such as the very nature of the location called for.

Counsel for appellant invoke our language used in *Smith v. Inland Empire R. Co.,* 114 Wash. 441, 195 Pac. 236, as follows:

"Since no one saw the deceased at the time he approached the crossing, and since there was no evidence to show what he did at or before he attempted to cross the railway track, it must be presumed that he used due care. If his engine was running, making a noise, as it no doubt was, and if he approached the crossing and stopped, looked and listened before attempting to make the crossing and did not hear the crossing bell or the approach of the train and did not see it until it was too late to avoid the accident, he was clearly not guilty of contributory negligence."

That, however, is not our present case. Here we have appellant's own evidence telling us that the deceased approached and drove clear up to the track without materially slackening his speed; that he had a clear zone of safety of thirty feet before reaching the track, within which, by exercising due care, he could have saved himself; and that he must have seen or heard the warning of the section foreman, had he been exercising due care. We think, in such a situation, the presumption cannot be indulged in that the deceased used due care in the way of looking, listening, or otherwise informing himself of the possible approach of the train. In our opinion in the *Smith* case, Judge Mount, speaking for the court, said:

"We are of the opinion that case [the *Benedict* case] is readily distinguishable from this by reason of the fact that there, while Mr. Benedict was crossing the track, witnesses who saw him testified that, as he approached the crossing, he was driving at a speed of eight or ten miles per hour; that he never slackened his speed but kept right on, and after crossing through the line of box cars, drove immediately in front of the train without looking or taking any precaution for his safety. There was, therefore, no presumption in that case that he exercised due care, because the evidence there very clearly showed that he exercised no care whatever."

Some other claims of error are presented to us, but they have only to do with rulings touching the admissibility of evidence relating to the negligent operation of the train, and however viewed by us would not affect our conclusion upon the question of the deceased's contributory negligence.

We see no escape from the conclusion that there can be no recovery for this unfortunate occurrence. The judgment of the trial court must be affirmed. It is so ordered.

MAIN, MITCHELL, BRIDGES, and TOLMAN, JJ., concur.