[No. 21850. Department One. August 26, 1929.]

W. F. MATTINGLEY, *Respondent*, v. OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Appellant.*[1]

[1]Reported in 280 Pac. 46.

*Pickrell & Stotler, Hamblen & Gilbert,* and *A. C. Spencer,* for appellant.

*Randall & Danskin,* for respondent.

HOLCOMB, J.—This case arose out of a railroad crossing accident wherein Jake C. Mattingley, the nineteen-year-old son of respondent, was killed when the automobile he was driving came into collision with a gas motor coach operated by appellant in the town of St. John, Whitman county, Washington. The verdict and judgment in favor of respondent in the sum of $3,300 are not in issue as to the amount, except as to the validity of any recovery whatever.

The facts which must be resolved in favor of respondent as presented to the court and jury were substantially these:

Near the corporate limits of St. John, Park street, running north and south, crosses the railway tracks of appellant. To the west of Park street crossing, the railway track runs through a deep cut which obscures, to some extent, the view of the driver on the highway approaching the crossing, and also, to some extent, obscures the view of an engineer or motorman of a train coming from that direction. The deceased resided with his parents about one-half mile from this

crossing. He was a student in the St. John high school, and, for nine years, had been entirely familiar with this crossing, passing over it almost daily. He was likewise familiar with the fact that it was a dangerous crossing, and had himself narrowly avoided a collision between his automobile and the motor coach of appellant approaching St. John, running about two hours late, a few months before. He had escaped injury then by turning his automobile quickly and running into the cattle guard on one side of the crossing.

On November 29, 1926, at about 2:30 p. m., young Mattingley, driving an Essex sedan north on Park street, approached the crossing in question. He had left the high school to go home, for the purpose of getting a chicken to be cooked and used in some high school social affair. At that time, a gasoline motor coach of appellant was approaching from the west. It was a half hour late.

There was conflict in the evidence as to whether or not signals were given on approaching the crossing by sounding the whistle or horn on the motor coach, or by ringing the bell. The motor coach was equipped with an ordinary locomotive bell and an air trumpet. Testimony in behalf of respondent was given which was at least as probable as the testimony in behalf of appellant, from witnesses who were in positions to see and hear, who observed the approach of the motor coach to the crossing in question, that no sound of the horn or ringing of the bell was heard until just at the moment of the impact, when there was heard the blast of the whistle or horn. There was also evidence that, at the instant of the impact, the bell was set ringing and continued ringing until the motor coach was stopped a distance of 759 feet from the place of the collision.

There was also a conflict in the evidence as to the speed of the motor coach. Respondent's witnesses placed it, at least, at thirty miles an hour. Appellant's witness, the motorman, attempted to say that the speed had been twenty or twenty-five miles an hour until reduced to eighteen miles an hour when he entered the cut, and at the plank roadway in this crossing had reduced it to six miles per hour, which was the speed to which all trains were limited by appellant's rules in crossing all street crossings in St. John. This restriction, as pleaded by respondent, was admitted in the answer of appellant. It was also alleged by respondent that, for years prior to November 29, 1926, appellant had customarily and habitually reduced the speed of its trains across the intersection of Park street, to six miles an hour, and that such habit and custom was well known to the public, which allegation was also admitted by appellant. There was evidence on behalf of respondent, also, that young Mattingley was familiar with this custom and rule of appellant requiring it to reduce the speed of its trains across that crossing to six miles an hour. There were also train-operating signs on the right-of-way of appellant, notifying the trainmen to restrict the speed of the trains to six miles an hour at such crossing.

There was no testimony on the part of respondent as to the way in which young Mattingley approached the crossing in question, or the rate at which his automobile was traveling, except by the interested witnesses for appellant. This the jury were warranted in disregarding. *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648; *Griffin v. Smith,* 132 Wash. 624, 232 Pac. 929; *Day v. Polley,* 147 Wash. 419, 266 Pac. 169.

There was also evidence of an admission by the motorman to respondent two days after the accident to

the effect that the motorman did not see the car driven by young Mattingley until the motor coach was ready to strike it.

Maps, photographs and testimony show that, at a point one hundred feet south of the crossing, a motor coach one hundred fifteen feet west of the crossing would be visible, and, from these points to the crossing, as a motor coach and automobile approached the crossing, each would be in sight of the other. This motor coach was seventy-six feet in length. Being a gas-propelled car, of course it made no smoke or steam. At the time of the accident, being one-half hour late, numerous witnesses testified that it was running very fast, or "very lively," and that, as it approached this crossing, it was descending a steep grade, had the power shut off and was coasting rather silently down the grade. From the fact that it ran 759 feet after coming in collision with the automobile; that it threw the automobile sideways, forty feet or more, almost completely destroying it, the reasonable inference could be reached that, had it been traveling at the usual speed, six miles an hour, and had sounded the crossing signals of whistle and bell at the usual places, it would have been observed by young Mattingley when he reached a point one hundred feet south of the crossing, at a place on the track one hundred fifteen feet west of the crossing, and as a reasonably prudent person, he would have stopped before attempting to cross, and thus have avoided the collision. At any rate, all this evidence and the inferences to be derived therefrom, are questions for the jury under the issues as to the negligence of appellant and contributory negligence of young Mattingley.

Appellant urges that the motion for directed verdict, or for judgment *n. o. v.* after the verdict, should

have been granted, because contributory negligence is alleged to have been shown conclusively. To sustain this contention appellant cites the following of our cases, and others:

Bowden v. Walla Walla Valley R. Co., 79 Wash. 184, 140 Pac. 549; McKinney v. Port Townsend & Puget Sound R. Co., 91 Wash. 387, 158 Pac. 107; Golay v. Northern Pacific R. Co., 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; Mouso v. Bellingham & Northern R. Co., 106 Wash. 299, 179 Pac. 848; Benedict v. Hines, 110 Wash. 338, 188 Pac. 512; Loughnan v. Hines, 117 Wash. 166, 200 Pac. 1086; Beckwith v. Spokane International R. Co., 120 Wash. 91, 206 Pac. 921; Dee v. Northern Pacific R. Co., 124 Wash. 580, 215 Pac. 11; Miller v. Oregon-Washington R. & Nav. Co., 128 Wash. 292, 222 Pac. 475; Baltimore & Ohio R. Co. v. Goodman, 275 U. S. 66, 72 Law Ed. 167.

In support of this contention, it is argued also that the standard of duty in respect to due care required of the driver of an automobile at railroad crossings, as established in this state, is: (a) he must look and listen; (b) he must select a place for observation where such observation will be effective; and, as a corollary to this, that the presence of obstructions which interfere either with his hearing or his seeing the approaching train merely emphasize his duty to use caution; (c) his car must be under control.

To these points appellant cites Cable v. Spokane & Inland Empire R. Co., 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; Bowden case; Benedict case; Beckwith case; and the Dee case, supra.

An examination of the instructions given by the trial court herein discloses that the trial court gave all these necessary elements of the duty of the driver of an automobile when approaching a railroad crossing in the instructions.

In most of the cases cited by appellant, there was direct evidence of what the driver of the automobile did. It could thus be determined by the trial court, or, if not properly determined by it, by this court on reviewing the case, whether the facts conclusively showed the contributory negligence of the injured person so that a recovery was not warranted.

In the case at bar, there is no such evidence except the interested evidence of appellant. Hence the situation is quite similar to that in *Smith v. Inland Empire R. Co.*, 114 Wash. 441, 195 Pac. 236. In that case, an adult was as familiar with the railroad crossing as was young Mattingley in this case. In that case, also, the train was running down a grade of two per cent with the power shut off, the brakes applied and the train coasting down grade. There, also, there was a conflict in the evidence as to whether any signals by bell or whistle were sounded upon the railway train before reaching the crossing. We there distinguished the situation from the facts shown in *McKinney v. Port Townsend & P. S. R. Co.*, 91 Wash. 387, 158 Pac. 107, and the *Benedict* case, *supra,* and said:

"Since no one saw the deceased at the time he approached the crossing, and since there was no evidence to show what he did at or before he attempted to cross the railway track, it must be presumed that he used due care. If his engine was running, making a noise, as it no doubt was, and if he approached the crossing and stopped, looked and listened before attempting to make the crossing and did not hear the crossing bell or the approach of the train and did not see it until it was too late to avoid the accident, he was clearly not guilty of contributory negligence. *Kent v. Walla Walla V. R. Co.*, 108 Wash. 251, 183 Pac. 87; *Golay v. Northern Pac. R. Co.*, 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; *Brandt v. Northern Pac. R. Co.*, 105 Wash. 138, 177 Pac. 806, 181 Pac. 682."

We also reviewed and distinguished nearly all the cases relied upon by appellant in this case in *Cline v. Northern Pacific R. Co.*, 123 Wash. 86, 211 Pac. 878. We there held that, where the evidence was conflicting as to the ringing of the bell or sounding of the whistle until the crossing was reached and whether the train was being operated at an excessive speed under the circumstances shown, were questions for the jury as to the proximate cause of the injury. We there also sustained a recovery by plaintiff holding that the case was governed by the *Kent* and *Brandt* cases, *supra,* and other cases cited.

In the instant case, the deceased had a right to believe that the motor coach had passed half an hour earlier. He also had a right to rely upon his knowledge of the custom of appellant in operating its cars through St. John over these crossings at not to exceed six miles per hour. It is to be assumed, as it was in the *Smith* case, *supra,* that he did what an ordinarily prudent person would do to avoid injury to himself. The fact that he had narrowly avoided injury a few months previously at the same crossing should be considered as emphasizing the necessity of caution on approaching this crossing, instead of indicating that he would act imprudently or carelessly.

The *Goodman* case, *supra,* by the United States supreme court, cited by appellant, was one originating and tried in a Federal inferior court, appealed to a Federal appellate court, and finally reaching the supreme court. From the citations in the decision, it appears that the Federal courts (like the Pennsylvania supreme court), have long held to a much stricter standard of duty on the part of persons approaching railroad crossings than have a great majority of state courts. At any rate, this court is bound by the rule of decision in this state until authoritatively overruled.

In another decision by that court, *Nashville, Chattanooga & St. Louis R. Co. v. White* (2 cases), 158 Tenn. 407, 15 S. W. (2d) 1, 278 U. S. 456, originating in a state court of Tennessee, going to the United States supreme court from the supreme court of that state, the latter court held that it was bound by the finding of the supreme court of Tennessee respecting the necessity of a city ordinance regulating signals at crossings by a railroad.

Under our rule of decision, we are satisfied that there was ample testimony to go to the jury upon the issues of negligence of appellant and contributory negligence of the deceased which were properly submitted under correct instructions to the jury. There were no facts or circumstances showing contributory negligence by the deceased, conclusively. Hence, it was for the jury to decide.

An instruction, requested by appellant and refused by the court, reading,

"The law requires the driver of an automobile approaching a railroad crossing to make reasonable use of his senses so as to avoid danger from approaching trains. The law also requires him to have his car under such control that he can stop his car and avoid a collision after he reaches a point where he has a clear view of any approaching train. If you find from a preponderance of the evidence that the deceased, Jake Mattingley, did not have his car under control as he approached the crossing so that he could stop and avoid a collision after he reached a point where he had a clear view of the approaching motor car, then I instruct you that he was himself guilty of contributory negligence,"

was rejected by the trial court because of an instruction (No. 10), requested by respondent, being given in place thereof. It reads:

"The law requires the driver of an automobile approaching a railroad crossing to make reasonable use of his senses so as to avoid danger from approaching trains.

"The law also requires him to have his automobile under such control that he could stop or avoid a collision after he reaches a point from which he could see the place where a train traveling at a lawful rate of speed would make a collision appear probable to a man of ordinary prudence if he did not stop or slow down.

"If you find from a preponderance of the evidence that the deceased, Jake Mattingley, did not have his automobile under such control that he could stop or avoid a collision after he reached a point from which he could have seen the place where the defendant's motor coach, if traveling at a lawful rate of speed, would have made a collision appear probable to a man of ordinary prudence if he did not stop or slow down, then I instruct you that he was himself guilty of contributory negligence."

Appellant insists that the requested instruction properly states the law and that instruction No. 10 does not state the law, is confusing, misleading, contradictory, and injects an issue into the case for consideration which is entirely foreign to the action.

As heretofore suggested, the instructions given by the trial court properly defined the issues, the meaning of the term negligence, ordinary care and contributory negligence; that the burden of establishing contributory negligence by a preponderance of the evidence was upon appellant; that the mere fact that the accident happened raises no presumption of negligence; that, when the negligence was the joint negligence of both parties, no recovery could be had; and instructions after No. 10 charged that it was the duty of the driver of an automobile to reduce the speed of his car on passing an advance railroad crossing sign to not exceed twelve miles per hour; that a railroad cross-

ing is itself a sign or warning of danger; that an obstructed crossing requires a greater degree of care on the part of an automobile driver than is ordinary; that a driver of an automobile across a railroad crossing must look and listen from an effective point and have his car under control at such point; and that, if the deceased was guilty of contributory negligence, respondent could not recover, even though appellant had been guilty of negligence.

The substance of the law requested by appellant was much more comprehensively, and more favorably to appellant, covered by the charge of the court.

Instruction No. 10, given at the request of respondent, seems to have been given under the impression that it was a statement of the law as stated by this court in the *Brandt* case, *supra*.

In that case, there was a feature involved as to the lawful rate of speed in the operation of the railroad train. What we said in the *Brandt* case was, applying the law to the facts there appearing, that the jury may have rightfully determined that the deceased, because of the obstructions, had a limited view only, but could, from the point at which the evidence indicates that he or his son looked, have seen the approaching train, if, running at a reasonable or lawful rate of speed, it was within the danger zone, etc. We also there held that, under the evidence produced in favor of respondent, the jury may have found that no warning was given of the approach of the train, except the usual sounds and sights occasioned by its operation; it being admitted that it was not running on the usual schedule; and that the deceased acted as a reasonably prudent man when he relied upon his limited view of the track and the absence of the sound of bell or whistle.

The instruction here says:

". . . that the law requires a driver of an automobile to have it under such control that he could stop or avoid collision after he reaches a point from which he could see the place where a train traveling at the *lawful rate of speed* would make a collision *appear probable* to a man of ordinary prudence if he did not stop or slow down."

The italicized words are especially criticized.

We do not commend the instruction attacked. It is hard to understand what is meant by its language in that portion to which attention has been called.

While there was no question in this case as to the lawful or unlawful speed of the railway motor coach under any statute or ordinance, appellant had made its own law as to the speed at which its motor coach should be operated over such crossing, of which the public and the deceased were well aware. The use of the word "lawful" was technically incorrect in the portion of the instruction assailed. Some such words as "usual and customary," would have been more accurate. A more accurate phrase than "appear probable," in such an instruction, would have been "appear possible," in defining the standard of care for the driver in such case. However, we do not believe the jury were misled by the use of the word "lawful" in the instruction. It is not an instruction that we can presume to have been prejudicial when considered with all the instructions. While we disapprove the portion of the instruction complained of, we are not inclined to the view that it was confusing and misleading upon the real issues in the case, the negligence of appellant and contributory negligence of respondent. As to those issues, the law was so carefully defined and stated to the jury that, upon a view of the instructions as a whole, we are unable, at this time, to say that, upon whatever error there was in giving instruction No. 10, the verdict should be reversed.

On the whole case we conclude that there is no reversible error in the record and that the verdict and judgment should stand.

Affirmed.

TOLMAN, FULLERTON, BEALS, and MAIN, JJ., concur.

