GEORGE M. PAUL, Appellant, v. UNITED RAIL-
WAYS COMPANY OF ST. LOUIS, Respondent.

### Springfield Court of Appeals, January 3, 1911.

1. **STREET RAILWAYS: Injury to Traveler: Contributory Neg-
ligence.** In a suit against a street railway company for per-
sonal injuries, the evidence showed that plaintiff alighted from
one of defendant's north-bound cars, passed behind this car
and crossed over to the other track, where he was struck by a
south-bound car. It appeared that he looked for the south-
bound car when he was on the west rail of the north-bound
track, but his view was obstructed by the car from which he
had alighted. He listened also, but heard no sound of the
car's approach. *Held*, that plaintiff was guilty of contributory
negligence in not continuing to look for a car after he passed
from behind the car from which he had alighted, and if nec-
essary, he should have waited for this car to move on so his
view would have been unobstructed.

2. **HUMANITARIAN DOCTRINE: Street Railways: Evidence.**
In a suit against a street railway company for injuries to
plaintiff who was struck by a car as he was crossing the track,
it is *held* that the humanitarian or last chance doctrine is not
in the case, because there was no showing that the car could
have been stopped in time to have averted the collision after
plaintiff had placed himself in a position of peril.

3. **STREET RAILWAYS: Duty of Traveler: Look and Listen.**
While ordinary care does not usually require a traveler to look
and listen constantly at all points of his approach to the rail-
way crossing, it does require that he should look just before
going upon the track or so near thereto as to enable him to
cross before a car within the range of his view, going at the
usual rate of speed, would reach the crossing.

4. **CONTRIBUTORY NEGLIGENCE: Acting on Presumption:
Street Railways: Excessive Rate of Speed.** A person has no
right to assume the existence of a certain state of facts, when
by exercising ordinary care he could discover the true state
of facts, and a person who looks, while some distance from
the track, to see whether or not a car is approaching and
sees none, has no right to go blindly forward without looking,
on the presumption that a car will not approach at a high
rate of speed.

152 App.—37

5. ———: ——: ———: ———: **Plaintiff's Ignorance of Speed Ordinance.** Plaintiff was struck by a street car as he was crossing the track. The evidence failed to show that plaintiff was familiar with the speed ordinance of the city. *Held*, that it could not be presumed as an excuse for plaintiff's contributory negligence that he relied on an observance of such speed ordinance.

6. **PRESUMPTIONS: Evidence.** Presumptions have no place in the presence of actual facts disclosed to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Hall & Dame* for appellant.

(1)   Plaintiff was not guilty of contributory negligence as a matter of law, under the evidence, since he took care to see that he would be safe from any car running at a lawful rate of speed and he assumed, as he had a right to do, that cars would not be run at a reckless or unlawful speed. Riska v. Railway, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Powers v. Transit Co., 202 Mo. 267; Meng v. Railroad, 108 Mo. App. 553; Moore v. Transit Co., 95 Mo. App. 739; Moore v. Transit Co., 194 Mo. 1; Doherty v. Railroad, 121 N. W. (Iowa) 690; Clark's Accident Law (2 Ed.), 226; Railroad v. Mitchell, 127 S. W. (Ky.) 770; Chun v. Railroad, 207 U. S. 302; Richter v. Railway, 129 S. W. 1055.

*R. E. Blodgett* and *T. E. Francis* for respondent; *Boyle & Priest* of counsel.

(1)   Plaintiff was not entitled to have his case submitted to the jury under the last chance doctrine, since there was no proof as to the distance the car was from the point of collision when the motorman could have seen plaintiff, nor as to the distance in which the car, running at the rate of speed it is said to have been running, could have been stopped.   Wilkerson v. Railroad,

140 Mo. App. 316; Koepel v. Railroad, 181 Mo. 395; Theobald v. Transit Co., 191 Mo. 433; Dey v. Railroad, 140 Mo. App. 469; Zurfluh v. Railroad, 46 Mo. App. 642. (2) Plaintiff was guilty of such contributory negligence as bars his recovery under the following "spotted mule cases:" Hornstein v. Railroad, 195 Mo. 440; Giardina v. Railroad, 185 Mo. 330; Hafner v. Transit Co., 197 Mo. 196; Ross v. Railway, 125 Mo. App. 614. (3) Plaintiff had no right to rely on the presumption that the car would not run in excess of the maximum rate of speed permitted by ordinance to the extent of failing to make a reasonable use of his senses for his own safety, and if he had testified (which he did not) that he relied on such presumption, he would, nevertheless, have been guilty of contributory negligence as a matter of law in failing to look for the approaching car; since, if he had looked, the true situation would have been disclosed. Stotler v. Railroad, 204 Mo. 639; Laun v. Railroad, 216 Mo. 563; Green v. Railroad, 192 Mo. 131; Schaub v. Railroad, 133 Mo. App. 450; Gumm v. Railroad, 141 Mo. App. 314; Cole v. Railroad, 121 Mo. App. 611. (4) But, in no event, could it be presumed in this case, in excuse of plaintiff's contributory negligence, that he relied upon an observance of the speed ordinance, since he did not testify he was familiar with the provisions of such ordinance and relied upon the same. Mockowik v. Railroad, 196 Mo. 571.

STATEMENT.—This is an action in which appellant sued for damages for personal injuries caused by a collision with a street car of the respondent in the city of St. Louis. After hearing the evidence for the plaintiff, the court sustained a demurrer to the same and directed the jury to return a verdict for the defendant, from which action the plaintiff appealed to the St. Louis Court of Appeals and the cause has been transferred to this court. The appellant prepared and filed his abstract and brief in this court and did not by motion

or otherwise question the jurisdiction of this court to hear and determine this cause.

The plaintiff's petition charges that the defendant is a corporation conducting a street railway on public thoroughfares in the city of St. Louis, Missouri, and carrying passengers for hire by means of electric cars; that while plaintiff, on January 29, 1909, was crossing DeHodiamont avenue at or near the south side of the intersection of North Minerva avenue with DeHodiamont avenue, defendant's servants in charge of its south-bound car of the Hamilton avenue line carelessly and negligently and without using any care to watch for persons on defendant's track at said crossing of Minerva and DeHodiamont avenues, or moving toward it and in danger of being injured by said car, and without using any care to control the movements of said car, or stop same to avoid injury to the plaintiff, and whilst running said car at a high and reckless rate of speed, caused and suffered said car to strike plaintiff violently, and hurl him down in front of and beneath said car, and drag and crush plaintiff, whereby plaintiff was severely bruised and wounded and injured. The petition then alleges the violation of the vigilant watch ordinance (sec. 1864, Rev. Code of St. Louis, 1907), which requires that motormen and conductors of street cars must keep a vigilant watch for persons on foot, either on the track or moving toward it, and upon the first appearance of danger to such persons to stop the car within the shortest time and space possible, and that such violation directly caused plaintiff's injury. The petition, for a third and further assignment of negligence, charges the violation of an ordinance of the city of St. Louis (sec. 1870, Rev. Code of St. Louis, 1907), which provides that whenever any car is about to pass another car going in the opposite direction, at a point where it is permissible to passengers to alight from or to board a car, said car shall proceed at a rate of speed not to exceed three miles an hour, and that the

violation of said ordinance directly caused the car in question to strike and injure plaintiff.

The answer was a general denial and a plea that plaintiff was guilty of contributory negligence in stepping on the track immediately in front of an approaching car and so close thereto that the same could not have been stopped in time to have averted the collision.

Plaintiff's reply was a general denial.

Evidence introduced by the plaintiff tended to prove the following facts: DeHodiamont avenue, on which are the double tracks of the defendant's Hamilton line, runs north and south in the city of St. Louis, and Minerva avenue runs east and west, but there is an offset in Minerva avenue where it intersects DeHodiamont avenue. The part of Minerva avenue which leads into DeHodiamont avenue from the west—sometimes called North Minerva—is about fifty feet north of that part of Minerva avenue which extends to the east— sometimes called South Minerva—from DeHodiamont. Plaintiff was returning to his home from his work, and at about 6:15 p. m. of the day of his injury—January 29, 1909—he alighted from one of defendant's northbound Hamilton avenue cars at DeHodiamont and North Minerva avenues, a regular stopping place for passengers, with the intention of going west to his home, and passed behind the car from which he alighted; when he came to the west rail of the north-bound track, he looked north along the south-bound track and could see at least forty feet to the north up the south-bound track and he saw no car on said southbound track. He listened, but heard no sound of warning of a car's approach. He then proceeded on his way across the tracks toward the west side of DeHodiamont avenue. When he came to the middle of the south-bound track, a south-bound car came upon him and ran against him, knocking him down under the fender and dragging him fifty feet before the car could be stopped, and se-

verely injuring him. One witness, Peter Yeakel, testified that the car which collided with plaintiff was running about twenty miles an hour at the time it struck plaintiff. There is a little curve in the tracks at that point. Plaintiff looked straight ahead as he proceeded westward across the tracks after looking north up the track from the place above mentioned where he could see that there was no south-bound car within forty feet of him. He did not hear the south-bound car which struck him nor any sound of gong, or warning of any kind, of its approach. Yeakel, who was a passenger on the car which struck plaintiff, testified that no gong was sounded. Though it was dark, plaintiff does not contend that he could not have seen the car more than forty or fifty feet if no obstruction had been in the way. He thought there was no need of looking to a greater distance for a car. His ordinary gait was four miles an hour and he had several times compared the speed of moving street cars with the speed he was making afoot. Plaintiff testified that after he looked the first time and continued to go on, he was thinking of getting home; that he was thinking about a street car and whether he had time to cross after he looked and that he thought of this because he was in the habit of crossing a double track. He did not hear the car coming, and he was listening. It was then light enough to see an object fifty or one hundred yards away if it was large enough. In the opinion of one witness, as we have stated, the speed of the car was twenty miles an hour, but there was no evidence tending to prove within what distance a car running at that rate of speed could have been stopped, nor was there any evidence tending to show how far the car was from the plaintiff when he entered the danger zone, and there is, therefore, no room for the application of the last chance doctrine. The speed ordinance counted on in the petition was introduced in evidence, but there was no evidence tending

to show that plaintiff was aware of the provisions of said ordinance and relied upon the same.

NIXON, P. J. (after stating the facts as above).—I. As to the last chance doctrine, it may be said that there is not a scintilla of evidence proving, or tending to prove, how far the car was from the point of the collision when the plaintiff emerged from behind the northbound car and entered the danger zone, nor is there any evidence as to the distance in which a car running at the rate of speed this car is said to have been running (twenty miles an hour), could have been stopped, and there was, therefore, no showing that the car could have been stopped in time to have averted the collision, after plaintiff placed himself in a position of peril. The humanitarian or last chance doctrine is realistic in its operation, and seizes hold of conditions that actually exist at the time of the injury, and does not apply to conditions that could or should exist; and, in order to recover under it, it devolves upon the plaintiff to prove that after a situation of peril arose, the defendant by the exercise of ordinary care could have averted the injury to the plaintiff and failed to do so. As we said in the case of Wilkerson v. St. L. & S. F. R. Co., 140 Mo. App. l. c. 316, 124 S. W. 543: "As there are no tangible facts or circumstances to show where the deceased went on the track or so near it as to imperil his safety, there is no proof that the engineer could have stopped his train in time to have averted the accident, and there being a failure to prove negligence, no liability would attach to the defendant company." To the same effect is Zurfluh v. Peoples Ry. Co., 46 Mo. App. l. c. 642, where the St. Louis Court of Appeals said: "Now the difficulty which we encounter is, that the plaintiff's evidence fails to show how far away the car was, when he started the second time to cross the track, and within what distance the car could have been stopped. It seems to us that it was absolutely neces-

sary for the plaintiff to introduce some evidence tending to prove these facts. Otherwise, it would be impossible for the jury to decide intelligently, whether the defendant's servants were lacking in diligence or not, or whether they used proper efforts to stop the car or not." Further citation of authorities to sustain a proposition so self-evident would be superfluous.

II. Plaintiff testified that he was standing behind the north-bound car near the west rail of the north-bound track, and that he looked north from behind the car to see whether there was a car approaching on the south-bound track; that he could then see about forty feet only, the north-bound car preventing him from seeing farther than this along the track. After taking this look, he crossed the intervening space between the tracks —about five feet—going west, without looking, and he did not look again for an approaching car until he was upon the south-bound track, at which time the car which struck him was so close that a collision was unavoidable. He testified that at this time it was light enough to have seen an object fifty or one hundred yards away if it was large enough, and his counsel in their brief state: "Although it was dark, plaintiff does not contend that he could not have seen a car more than forty or fifty feet if no obstruction had been in the way."

The law in regard to pedestrians entering upon the tracks of a railroad company, under the circumstances shown by the plaintiff's own testimony in this case, is that while ordinary care does not usually require a traveler to look and listen constantly at all points of his approach to the railroad crossing, it does require that he should look just before going upon the track or so near thereto as to enable him to cross before a train within the range of his view going at the usual rate of speed would reach the crossing. [33 Cyc. 1013.] Under the conceded facts which we have detailed, coming from the mouth of the plaintiff, we have a case exactly parallel to that of Giardina v. St. L. & M. R. R.

Co., 185 Mo. 330, 84 S. W. 928, in which our Supreme Court said: "It may be conceded that the defendant was negligent in running its car at a high rate of speed and without sounding the gong past a standing car from the rear of which the motorman ought to have known that people were liable to pass. . . . Plaintiff was familiar with the location and also with the movements of the cars. . . . From where he stood the body of the east-bound car shut off his view to the east, but one who was as familiar with the movements of cars as he said he was, in fact, any man of common experience in plaintiff's place, should have known that in a moment the east-bound car would have gone and the obstruction of his vision would have been removed. . . . His act in stepping on or near the north track without looking for the west-bound car was negligence and it contributed to cause the accident." In the case of Hornstein v. United Rys. Co., 195 Mo. l. c. 455, 92 S. W. 884, the Supreme Court again expounded the law applicable to the state of facts disclosed in this record, as follows: "As was well said by BLAND, P. J.: 'Common prudence would have dictated, when the south-bound car began to move away that the plaintiff stop for a moment that he might have an unobstructed view of the east track, and see whether or not it was safe to proceed across the street. His failure to exercise this precaution was negligence, and there is no escape from the conclusion that this act of negligence contributed to and was the proximate cause of the injury; where this is the case the law is well settled that no recovery can be had.'" In the case of Hafner v. St. Louis T. Co., 197 Mo. l. c. 201, 94 S. W. 291, the law is declared as follows: "It is negligence for a motorman to run his car at a high rate of speed to a crossing where pedestrians are liable to be when his view of the crossing is so obstructed by a passing wagon that he cannot see whether or not the crossing is clear, but it is also negligence for a full-grown man to approach a railroad track

behind a wagon which so obstructs his view that he cannot see whether or not a car that he knows is liable to be coming is actually coming and enter upon the track without looking or pausing until the obstruction to his view has passed and when the negligence of the two thus combined to cause the accident, the street railroad company is not liable." In Ross v. Metropolitan St. Ry. Co., 125 Mo. App. l. c. 618, 102 S. W. 1036, the Kansas City Court of Appeals said: "The law is that when a car is in the way of a view of the track in the direction from which the car is liable to come a person must, in common prudence, wait until the obstructing car has passed on so that he may then look to some purpose." These cases are so clearly identical in their facts with those in the case at bar that we think they may be properly denominated—in the parlance of respondent's attorneys—"Spotted mule cases."

III. But plaintiff's counsel contend that he was not guilty of contributory negligence as a matter of law as "he took care to see he would be safe from a car running at lawful rate of speed and he had a right to assume that cars would not be running at a reckless and unlawful rate of speed."

A person has no right to assume the existence of a certain state of facts, when, by exercising ordinary care, he could discover the true state of facts; and a person who looks, while some distance from the track, to see whether or not a car is approaching and sees none, has no right to go blindly forward without again looking, in reliance upon the presumption that a car will not approach at a high rate of speed. As said in Gumm v. The K. C. B. Ry. Co., 141 Mo. App. l. c. 314, 125 S. W. 796: "Plaintiff argues that she was justified in presuming that the train was not running to exceed six miles an hour. No presumption gave her the right to fail to make reasonable use of her senses for her own safety, and she had but to look from her place of safety

to know that the train was too close and was coming too fast for the attempt to be made to cross until it had passed. Evidently, she suffered her attention to be absorbed in something else, probably by the passing freight train, and forgot to look to the east. Her negligence, as a matter of law, is indisputable and it deprives plaintiff of any cause of action based on negligence of defendant which merely conduced to place his wife in peril." Further, as said in Cole v. Metropolitan St. Ry. Co., 121 Mo. App. l. c. 610, 97 S. ·W. 555: "He (plaintiff) had the right to indulge in the presumptions that the motorman would not run the car at a negligently high rate of speed; that he would sound the bell as the car neared the crossing and would reduce its speed, to avoid a collision, but this did not absolve him from the performance of his duty to observe the advancing car. A person approaching a railroad crossing whether in the country or in the city is not permitted to rely entirely upon presumptions, but must make reasonable use of his senses to guard his own safety and the failure to do this is negligence. The duty thus to protect one's own safety continues until the crossing has been traversed. A person in the exercise of reasonable care who is unhindered and whose view is unobstructed cannot take a last look at some distance from the crossing whether it be twenty feet or two thousand feet away and then shut his eyes and go blindly forward relying implicitly on the presumption that the servants of the railroad company will not be negligent in the running of its trains of cars."

IV. In no event could it be presumed in this case in excuse of plaintiff's contributory negligence that he relied on an observance of the speed ordinance since he did not testify he was familiar with the provisions of such ordinance and relied upon the same. The rule is, that courts will not assume an injured person relied upon the observance of speed regulations where he tes-

tifies but does not state that he was aware of the speed regulations and relied on them. This question has also received the consideration of our Supreme Court in the case of Mockowik v. K. C., St. J. & C. B. R. Co., 196 Mo. l. c. 571, 94 S. W. 256, Judge LAMM delivering the opinion, wherein it was said: "But will the law indulge presumptions where all parties to the actual occurrence are alive and go upon the stand and the facts are fully disclosed? If plaintiff knew of the ordinances and relied on the fact that defendant was obeying their provisions and acted on that reliance, could he not have said so? Under such conditions, reliance would seem to be a fact susceptible of proof as are other facts, and should be proved by the best evidence of which the case would admit. He of all men knew what the facts were, and, having declined to speak, may he invoke the aid of friendly presumptions? 'Presumptions,' as happily stated by a scholarly counselor, *ore tenus*, in another case, 'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' That presumptions have no place in the presence of actual facts disclosed to the jury, or where plaintiff should have known the facts had he exercised ordinary care, is held in many cases, of which samples are, Reno v. Railroad, 180 Mo. l. c. 483; Nixon v. Railroad, 141 Mo. l. c. 439; Bragg v. Railroad, 192 Mo. 331. To give place to presumptions, on the facts of this case, is but to play with shadows and reject substance."

From what has been said it follows as night follows day that the judgment of the trial court sustaining the demurrer to the evidence was the only one authorized by law, and it is hereby affirmed. All concur.