[No. 26897. Department One. April 6, 1938.]

GEORGE NYSTUEN *et al., Respondents,* v. SPOKANE COUNTY, *Defendant,* PETE MELE *et al., Appellants.*[1]

[1]Reported in 77 P. (2d) 1002.

*Edge & Wilson,* for appellants.

*H. Earl Davis,* for respondents.

SIMPSON, J.—Plaintiffs brought this action to recover compensation for injuries to themselves and damages to their automobile sustained in a collision with a truck owned by Spokane county and being driven by defendant Pete Mele, one of its employees.

Plaintiffs allege the driver of defendants' car was negligent in that he did not stop at a "stop" sign before entering the arterial highway upon which plaintiffs were driving, in failing to give the required signal indicating his intention to turn to the left, in failing to go to the center of the intersection before turning to his left, and in failing to apply his brakes just prior to the time of the collision.

Defendants, by answer, denied the charges of negligence and alleged that the driver of plaintiffs' car was guilty of contributory negligence.

Upon the issues thus presented, the case was tried to a jury, resulting in a verdict favorable to plaintiffs. After appropriate motions for judgment notwithstand-

ing the verdict and for a new trial were made and denied, defendants Mele have appealed.

The evidence which the jury were justified in believing is summarized as follows: The accident occurred on Appleway highway near Spokane, where it is entered by Argonne road. Appleway highway is a paved, four lane, arterial highway, sixty feet wide, running east and west. Argonne road is a paved road twenty feet wide. It enters the highway at right angles, but does not cross it. Approximately fifteen feet north of Appleway highway there is a stop sign on the west side of Argonne road.

Respondents, May 18, 1936, just prior to and at the time of the accident, were driving in a westerly direction on Appleway highway in a Model A Ford sedan. At the same time, appellant Pete Mele was driving a county truck south on Argonne road. As respondents came near the intersection of the two roads, their car came into collision with the rear left wheel of the truck driven by appellant Pete Mele, causing the injuries complained of.

Just before and at the time of the collision, respondents were traveling at the rate of from twenty-two to twenty-five miles per hour and appellant Pete Mele was driving at a rate of ten to twelve miles per hour. A building on one corner made the intersection an obstructed one. Appellant drove his truck into the intersection in a southeasterly direction, and in so doing cut the corner abruptly. His left wheels, according to one witness, traveled in a line not more than twelve feet southwest of the northeast corner of the intersection. Testimony showed that the actual impact of the cars occurred at a point approximately two and one-half to seven feet east of the east line of Argonne road extended, which point was approximately ten feet south of the north line of Appleway highway.

The truck was approximately sixteen feet in length, the box of which was six or seven feet in height. The pavement was dry and, according to respondents' testimony, the brakes could have been applied and the car stopped within twenty or twenty-five feet. Respondent driver had seen the truck coming south on Argonne road when it was approximately forty feet north of Appleway highway and when he was seventy-five to one hundred feet east of Argonne road. He observed the truck again when the front end was well past the stop sign on the north side of Appleway, at which time he was thirty or forty feet east of it.

Respondent's testimony was to the effect that he didn't slow down because he had the right of way, and when he saw the truck coming toward him in the intersection he speeded up slightly to go ahead of the truck, but when he saw he couldn't do that he turned to his right to go behind, as the result of which he hit the rear end of the truck, and that he didn't put on his brakes until after he had started to turn to the right.

■ Appellants' contention is that respondents' evidence disclosed that he was guilty of contributory negligence, in that, after he saw the truck coming out on the highway, he had ample time to stop his car in even less than half the distance that he was from the truck, but that, instead of so stopping, he attempted to run in front of it without slowing down, and then, failing to get by in that manner, swung to his right, still without slowing down or applying his brakes.

Before the court can take from the jury the question of contributory negligence, the acts done must be so palpably negligent that there can be no two opinions concerning them. *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799; *Traver v. Spokane St. R. Co.,* 25 Wash. 225, 65 Pac. 284; *Richmond v. Tacoma R. & P. Co.,* 67 Wash. 444, 122 Pac. 351; *Walters v.*

*Seattle,* 97 Wash. 657, 167 Pac. 124; *Jackman v. Seattle,* 187 Wash. 446, 60 P. (2d) 78.

In considering this question, we have in mind two rules governing the actions of drivers along an arterial highway. · First, each traveler upon the highway has the right to assume that the other traveler will obey the law of the road. *Ballard v. Collins,* 63 Wash. 493, 115 Pac. 1050; *Stubbs v. Molberget,* 108 Wash. 89, 182 Pac. 936, 6 A. L. R. 318. Second, every traveler along our highways must, on approaching an intersection, exercise ordinary care to avoid collision. *Young v. Smith,* 166 Wash. 411, 7 P. (2d) 1.

"All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers." *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533.

Respondents were proceeding west at a lawful rate of speed on their own right-hand side of the highway, and when they were within seventy-five or one hundred feet of the intersection, the driver looked to his right and saw the truck at a point forty feet north of Appleway highway. Respondents, being on an arterial highway, rightly assumed that the appellant would go to the intersection, stop there, and if he wanted to turn to the left, give a signal, indicating such intention, and then go over to the center of the intersection before so turning. *Keir v. Trager,* 134 Kan. 505, 7 P. (2d) 49, 81 A. L. R. 181. The right to this assumption was accorded him up until the time appellant reached the intersection, failed to stop, and started to turn to his left toward respondents.

In *Stubbs v. Molberget, supra,* we had for consideration the right of a driver to assume that another driver would obey the rule of the road concerning turning, and, in speaking of the right of one driver to assume that the other obey such rule, we said:

"He was not bound to anticipate that the appellants would depart from the regular course, and hence is not guilty of negligence, under the circumstances here shown, in failing so to do, even though the appellants did stop their car prior to the time of the collision."

The evidence shows that, at the time appellant started to cut the corner, respondents were about thirty feet east of the intersection. At this time, it became the duty of respondent driver to exercise that care which an ordinary prudent person would exercise under like circumstances to avoid a collision. He said that he attempted first to go ahead of the truck; then, finding that the collision was inevitable if he pursued that course, he turned to his right with the intention of going back of the truck. Whether he did the thing that an ordinary prudent person would have done in that situation, is a question of fact to be decided by the jury. It appears to us that there could reasonably be different views entertained concerning the question of whether or not the respondent driver acted properly under the circumstances.

Respondent driver found himself in a condition of peril and was subject to the rule laid down in *Ritter v. Johnson,* 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270, in which we said:

"It is, of course, the law that, when the driver of a vehicle is confronted with a sudden emergency, the driver, in putting into operation some plan by which he endeavors to avoid injury to himself or another, is not held to the exercise of the same degree of care to which he would be held if time were allowed within which to deliberate and choose the safest course. *Sheffield v. Union Oil* Co., 82 Wash. 386, 144 Pac. 529; *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331; *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Watkins v. Interstate Coach Co.,* 145 Wash. 221, 259 Pac. 393; *Greyhound Lines, Inc. v. Noller,* 36 F. (2d) 443."

It was urged that respondent driver was negligent in exceeding the speed limit of fifteen miles per hour, required of a driver while traversing an intersection. There is no merit in this contention, however, because, according to the testimony of respondents' witnesses, respondents never reached the street intersection. The collision occurred before they had reached that point.

It is next maintained that there was error in the giving of instructions numbered five and seven.

Instruction numbered five explained to the jury the duties of a driver who approached a highway intersection with the intention of turning thereat to the left and, among other things, said:

"If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such motor vehicle for a reasonable length of time; . . . and every such signal shall commence at a point not less than fifty feet before the turn is made."

The objection to this instruction is the facts show that the appellant did not have fifty feet in which to give his signal so that it could be observed by respondents before making the turn, and for the further reason that such a left-hand signal would not have given respondents any other warning than they already had. The evidence does show that the view to respondents' right was obstructed by big signs "all along and down" the Appleway highway, and the Argonne road could only be visible to respondents through a gateway or opening. It was evidently through these openings or gateways that the respondent driver saw the truck approaching, and afterwards, when he was closer to the intersection, saw the truck as it turned toward him.

The signal indicating one's intention to turn was commanded by the law in effect when the accident

occurred (Rem. Rev. Stat., § 6362-41 [P. C. § 196-41]), and should have been obeyed in order to give notice to all other travelers along the highway.

Speaking of the signal required of a driver who intends to stop at an intersection, we said in *Sebern v. Northwest Cities Gas Co.*, 167 Wash. 600, 10 P. (2d) 210:

"Appellants objected to the foregoing instruction on the ground that the law upon which it is predicated is not for the protection of crossing traffic, but is for the benefit of traffic following behind. We do not so hold. In our opinion, the purpose of the legislature in passing the statute referred to was to require the driver of a vehicle to give to impending traffic notice of his intention to stop. The signal required by law of a driver intending to stop is such as may be seen from vehicles coming from the front, the left and the rear. Vehicles coming from the right are favored vehicles and have the right of way. The fact that the signal required by law of a driver intending to stop can not be seen by the driver to the right of the stopping vehicle is, therefore, not determinative in considering for whose benefit the signal described by law is required."

It is as necessary to give the required signal indicating a turn as it is to give the signal to stop. Both are required by statute, and both are for the purpose of giving notice to other travelers of the driver's intention, so that they may govern themselves accordingly.

Instruction numbered seven told the jury that the driver along an arterial highway had the right to assume that other travelers approaching would observe the law with reference to arterial highways and bring their vehicles to a full stop before entering, yield the right of way to travelers on the arterial highway, and that the drivers on arterial highways were entitled to rely on such assumption until it became apparent that the driver upon the other highway did not intend to observe the law. He then made the rule applicable

to respondents and appellants, saying that respondent driver was entitled to assume that appellant would bring his truck to a full stop and yield the right of way to respondent until it became apparent that appellant did not intend to observe such rule of the road, ending the instruction with these words:

" . . . and if it was then too late for the plaintiffs to avoid the collision, they cannot be charged with contributory negligence."

What we have already said concerning the rights of respondents while driving to the intersection applies to this instruction. The instruction was entirely proper when we consider that, in addition, the court gave another one which explained to the jury that, if they believed a reasonably prudent driver in respondent's position would have applied his brakes to avoid the collision, and if they further found that respondent failed to do so, such failure would constitute negligence. They were further instructed that, if such negligence caused or proximately contributed to the accident, then respondents could not recover.

Another instruction defined contributory negligence, and instructed the jury that, if they found respondent driver guilty of such negligence, then respondents could not recover.

We conclude that the instructions properly stated the law applicable to the facts presented. Instructions must be construed as a whole, and if, when so considered, they properly state the law, it is sufficient. *Lew Wong v. Wicklund,* 133 Wash. 93, 233 Pac. 304.

Upon the whole record, we are satisfied that the court did not commit error.

The judgment is affirmed.

STEINERT, C. J., MAIN, GERAGHTY, and HOLCOMB, JJ., concur.