[No. 27617. Department Two. December 5, 1939.]

OPAL MORRIS, *as Personal Representative of the Estate of ·Wade Morris, Deceased, Respondent,* v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY *et al., Defendants,* HENRY A. SCANDRETT *et al., Appellants.*[1]

[1]Reported in 97 P. (2d) 119.

*A. N. Whitlock, Thos. A. Maguire,* and *A. J. Laughon,* for appellants.

*Will G. Beardslee* and *George F. Ward,* for respondent.

JEFFERS, J.—This action was instituted by Opal Morris, as the personal representative of the estate of Wade Morris, deceased, for the benefit of herself and three minor daughters, to recover damages against the defendants, Chicago, Milwaukee, St. Paul & Pacific Railroad Company, a corporation, Henry A. Scandrett, Walter Cummings, and George I. Haight, trustees in bankruptcy thereof, Frank Warren, and Charles T. Holley, for the death of Wade Morris, husband of plaintiff and father of the three minor children, which occurred at a highway grade crossing west of Ellensburg, in a collision between a truck operated by deceased and the regular passenger train of the defendant corporation, operated at the time by defendants Frank Warren and Charles T. Holley.

The complaint, in so far as material herein, alleged

that, while the truck of deceased was lawfully on the railroad and highway crossing, one of defendant corporation's trains, traveling in a westerly direction, and being operated and controlled by the defendants Frank Warren and Charles T. Holley, without sounding any whistle, bell, or warning of any nature whatsoever, and traveling at a dangerous, excessive, and unlawful rate of speed of sixty miles per hour, or more, crashed into the truck and caused the death of Wade Morris. The complaint further alleged that the highway and crossing are clearly visible to anyone operating a train along the railroad in a westerly direction for more than a mile east of the crossing.

The answer denied the allegations of negligence in the complaint and affirmatively alleged that the contributory negligence of deceased was the sole proximate cause of the collision and death of deceased. The reply denied the affirmative matter alleged in the answer.

The action was tried to the court and jury, and resulted in a verdict in favor of plaintiff, wherein damages were awarded to the widow in the sum of ten thousand dollars, and to the daughters of deceased and plaintiff as follows: Dorothy Morris, three thousand dollars, Danell Morris, five thousand dollars, and Marion Morris, seven thousand dollars.

A challenge to the sufficiency of the evidence was interposed at the end of plaintiff's case, which was denied. Motion for judgment notwithstanding the verdict, and in the alternative for new trial, were timely made and denied, and this appeal by defendants followed.

By stipulation of counsel, the defendant Chicago, Milwaukee, St. Paul & Pacific Railroad Company, a corporation, was dismissed from the action, and this appeal is being prosecuted by the other defendants.

The accident occurred about four miles west of Ellensburg, at approximately four-thirty A. M., on the morning of July 28, 1938, at a point where the highway to the coast over Snoqualmie pass crosses the main line of the railroad. The highway referred to is what is known as the old road, and was being used, and had been used since about April 1st, for the reason that the new highway was being paved.

The physical facts relative to the crossing, the highway upon which deceased was proceeding at the time of the accident, and the conditions generally existing at the scene of the collision, are, we think, undisputed. The highway runs nearly parallel with the railroad track for some considerable distance east of the crossing. There were no trees, brush, or any other obstructions, except telephone poles along the north side of the highway and the trolley poles on the south side of the tracks, for a distance of about sixteen hundred feet. The testimony shows that, at about sixteen hundred feet east of the crossing, it is 442 feet between the highway and the tracks, and that from the center of the highway to the nearest rail at the point where the highway makes the turn to the right to cross the tracks, is forty-five feet. The testimony conclusively shows that it was daylight. There was a railroad crossing sign over two hundred feet east of the crossing on the highway, and a large warning sign at the crossing.

Deceased had been over this road the day before, going after hay, and at the time of the accident, was returning toward his home in Renton. Deceased was driving a Mack truck, and had the hay loaded thereon so that it was about eight feet wide, and came up higher than the top of his cab, his view to the rear being entirely obstructed by his load. The cab had side win-

dows, the dimensions of which were about sixteen by eighteen inches.

Following the truck driven by deceased was another truck driven by Lyle Hall, who was accompanied by his thirteen year old daughter, and some distance behind the Hall truck was another truck, also traveling west, driven by Earl Clark, accompanied by Sidney King. There was no traffic immediately approaching from the west.

Deceased had driven onto the highway ahead of the Hall truck, from a cross-road leading into it from the new highway, at a point about three-quarters of a mile east of the crossing, and thereafter had proceeded ahead of the Hall truck to the crossing. Lyle Hall, called as a witness for appellants, stated that his speed from the time deceased pulled in ahead of him to the crossing was about twenty-six to twenty-seven miles per hour; that deceased was about three hundred feet ahead of him and remained about that distance in front of him until deceased turned to cross the tracks. The witness further testified that he saw deceased's truck at all times after it came on the road in front of him until it was struck. Hall further testified that, as deceased came onto the turn, he slowed down to about ten to twelve miles per hour, and was moving at that speed when struck by the train. Hall further testified that, at the time of the collision, he was two hundred to two hundred fifty feet behind deceased, and that deceased did not stop prior to crossing the tracks. He further testified that the train was about one hundred fifty to two hundred feet from the crossing when deceased started to make the turn, and that he thought the train was going forty to forty-five miles per hour. He also testified he heard no whistle.

Earl Clark, who was driving the truck following the Hall truck, called as a witness for respondent, testified that he was about a quarter of a mile from the crossing at the time of the collision. The witness stated that he was driving at about forty to forty-five miles per hour, and that the train was going sixty to sixty-five miles per hour; that he could see the truck which was struck, although there was another truck loaded with hay between him and deceased's truck; that it was daylight, and he was not using lights to drive by; that there were no buildings, trees, or cuts to keep one from seeing the train, and that it was perfectly level. This witness and others testified that it would be impossible, because of the load, for deceased to see back in the direction the train was coming, until he went into the turn to approach the crossing, and the testimony varies as to how far one could then see, unless he stopped and leaned out of the car window. The witness heard no whistle.

Sidney King, a witness for respondent, testified he was a truck driver, and lived at Yakima. He was riding with Clark, and he testified that, when they were about three-tenths of a mile from the crossing, he saw two trucks ahead of them, and that one of them stopped and the other one just started to pull onto the tracks, when there was a big flash of fire; that he saw the train when it was about a quarter of a mile from the crossing; that the train was going sixty to sixty-five miles per hour, and that the Clark truck, in which he was riding, was going forty to forty-five miles per hour; that the truck which was struck was down close to the curve when he first saw it, and was going quite slow, probably five miles an hour. He further testified that he just presumed deceased's truck was going at that speed; that he could see a quarter of a mile ahead and tell how fast the truck was going. The

witness did not know whether deceased's truck stopped before crossing or not.

Mr. Westerfield, an employee of the Railway Express Agency, and in no way connected with appellants except that he worked on the train, testified that he was looking out the window on the left side and saw the two trucks loaded with hay; that he saw them shortly before the first truck passed from his view as it went into the turn to approach the crossing; that the other truck (Hall truck) was about a city block behind; that the trucks were going considerably slower than the train, and that the truck which was hit slowed down as it went into the turn.

The witnesses, Hall, King, Clark, and Westerfield were the only eye-witnesses to the operation of deceased's truck and to the conditions surrounding the scene of the accident just prior thereto, and, in our opinion, they are all disinterested witnesses.

Appellants contend the court erred in refusing to hold, as matter of law, that deceased was guilty of contributory negligence which was the proximate cause of his death.

The decision we have reached on this question, in our opinion, is controlling in this case and renders it unnecessary to pass upon the question of whether or not appellants were negligent, although we have herein called attention to one case which we think expresses the general rule in this state relative to the claimed negligence of appellants.

In the consideration of a motion for judgment notwithstanding the verdict, the evidence most favorable to respondent must be accepted as true.

The doctrine of contributory negligence is based upon the principle that no person is ever absolved from exercising reasonable and ordinary care for his own safety. *Von Saxe v. Barnett,* 125 Wash.

639, 217 Pac. 62; *Garrow v. Seattle Taxicab Co.,* 135 Wash. 630, 238 Pac. 623, 45 A. L. R. 293; *Alexiou v. Nockas,* 171 Wash. 369, 17 P. (2d) 911. We stated in *North Coast Power Co. v. Cowlitz C. & C. R.,* 108 Wash. 591, 185 Pac. 615:

"It is, according to both reason and authority, the rule that what would be due care under certain circumstances would not be due care under other or different circumstances, and that, if anything in the surrounding conditions and circumstances reasonably suggests the necessity for an increase of care to avoid peril and damage, the duty to increase such care proportionately increases. This court, in *Helliesen v. Seattle Elec. Co.,* 56 Wash. 278, 105 Pac. 458, tersely said: 'In determining the question of contributory negligence due care or ordinary prudence is the only known test.' "

As to the right of the court to determine that a person is guilty of contributory negligence, as a matter of law, we stated, in the early case of *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799:

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law. . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. . . . And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. . . . If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury."

The rule announced in the *McQuillan* case has been followed in *Traver v. Spokane Street R. Co.,* 25 Wash. 225, 65 Pac. 284; *Bell v. Northwest Cities Gas Co.,* 164 Wash. 450, 2 P. (2d) 644; *Harry v. Beatty,* 177 Wash. 153, 31 P. (2d) 97; *Scott v. Pacific Power & Light Co.,* 178 Wash. 647, 35 P. (2d) 749; *Hayden v.*

*Colville Valley Nat. Bank,* 180 Wash. 220, 39 P. (2d)
376; *Jackman v. Seattle,* 187 Wash. 446, 60 P. (2d)
78; *Nystuen v. Spokane County,* 194 Wash. 312, 77 P.
(2d) 1002; *Bender v. White,* 199 Wash. 510, 92 P. (2d)
268.

One who approaches a railway crossing on a
public highway is as much under the duty of keep-
ing a lookout as is the railway company; and with
knowledge that the railway company has the right of
way, and cannot instantly stop its trains to avoid acci-
dents, it becomes his duty to use every means which
a reasonably prudent person would use, under the
existing circumstances, to avoid a collision.

In the case of *Mouso v. Bellingham & N. R. Co.,*
106 Wash. 299, 179 Pac. 848, we announced the follow-
ing rule, which has since been consistently followed:

"In a case like this, where the physical facts are
uncontroverted and speak with a force that overcomes
all testimony to the contrary, reasonable minds must
follow the physical facts, and therefore cannot differ."

In the instant case, we think the physical facts are
not controverted, and that the testimony of the three
disinterested eye-witnesses is not in conflict as to any
essential and controlling fact. It is true there was a
difference of opinion as to the speed of the train, but
this, in our opinion, would not be an essential and con-
trolling fact, as all of these witnesses stated that the
truck was plainly visible for a quarter of a mile as it
went into the turn to approach the crossing, and it also
appears that there was no obstruction of any kind
shutting off the view down the tracks to the east, other
than the obstruction caused by the hay on the driver's
truck, and that there was no reason why deceased
could not have seen the train after making the turn,
even with his load, had he looked. It is apparent the
train must have been close at the time deceased made

the turn to approach the tracks, as he had only thirty-five or forty feet to go, and his truck was struck about the middle of the cab.

In *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512, the deceased husband and father had been killed in a highway crossing accident. It appears that he had continued his speed of ten to fifteen miles per hour up until the collision. The highway paralleled the tracks for some distance on the west side going to the crossing. There was a conflict in the evidence as to whether or not a whistle was blown. In the cited case, we quoted from *Bowden v. Walla Walla Valley R. Co.,* 79 Wash. 184, 140 Pac. 549:

" 'The driver of an automobile, approaching such a crossing as the one in this case, must make reasonable use of his senses to guard his own safety, and the failure to do so is negligence;' "

continuing:

"There is no dispute as to the essential and controlling facts. Together with the physical facts disclosed by the oral evidence, photographs, and maps of the scene, they stand as a unit to convince one of the charge of contributory negligence, as a matter of law."

It is contended by respondent that appellants were negligent in operating the train at an excessive speed, and in failing to blow a whistle or give any warning. We held in *Sadler v. Northern Pac. R. Co.,* 118 Wash. 121, 203 Pac. 10, that the deceased was guilty of contributory negligence, as a matter of law, in that he failed to exercise the degree of care imposed upon him, and that the suing widow could not recover, irrespective of the negligence of the defendants.

Respondent contends that, because the hay on the truck was a lawful load, even though it obstructed all view to the rear, deceased was not negligent in not

seeing the train, apparently contending that deceased was entitled to take advantage of a condition which he had himself created. Respondent admits that where the evidence shows an unobstructed view of an approaching train at a time when it would have been possible to stop, and there is no reason for not seeing the train, one who proceeds onto the track is guilty of contributory negligence, but contends such a situation is not present in the instant case, because it is claimed the proof shows the deceased was in a position where he could not see the train. This contention is based entirely upon the fact that, if deceased's view was obstructed, it was because of the load of hay on the truck. It seems to us, the obstruction having been caused by deceased, he, realizing such to be the case, must be held to a higher degree of care in approaching a railroad crossing, in order to determine whether or not he could safely cross, because of the condition for which he himself was responsible, than would otherwise be required.

In *McFadden v. Northern Pac. R. Co.*, 157 Wash. 437, 289 Pac. 1, the deceased was killed when he collided with a train which was crossing a street. The accident occurred at night, and it was foggy at the time. In the cited case, the court quoted from the case of *Keene v. Pacific Northwest Traction Co.*, 153 Wash. 310, 279 Pac. 756, as follows:

" 'There was, it is true, a fog, at the time, which more or less obscured his [the injured person's] vision, but this, instead of excusing him from exercising care and caution, rather added to his duty in that respect. If he could not see whether or not he was entering a zone of danger in venturing onto the railway track, it was his duty to take some other means of ascertaining the fact. He could not abandon all caution, take a chance on escaping injury, and, failing to escape, charge his delinquency to another.' "

See *Dumbolton v. Oregon-Washington R. & N. Co.,* 186 Wash. 433, 58 P. (2d) 806.

The above cited cases bear out the general rule that, where any condition is present which tends to obscure the view of one approaching a railroad crossing, a greater degree of care, proportionate to the conditions prevailing, is required of such one in determining and observing the danger of approaching trains.

We think the case of *DeTemple v. Schafer Bros. Logging Co.,* 169 Wash. 102, 13 P. (2d) 446, is also in point, and that, under the rule therein announced, deceased in the instant case did not use that degree of care required of him under the conditions existing at the time of the accident, and that therefore the trial court should have held, as a matter of law, the deceased was guilty of contributory negligence, barring a recovery herein.

In *Haaga v. Saginaw Logging Co.,* 169 Wash. 547, 14 P. (2d) 55, after a second rehearing *En Banc,* we stated the rule relative to one approaching a railroad crossing, as follows:

"We have repeatedly stated that the general rule regarding the standard of care to be exercised by those traveling upon a highway is that they must exercise a reasonable care under the existing circumstances. We have, in many of our decisions, given judicial expression to what is commonly and currently accepted as a well-known fact, i. e., that a railroad crossing is a proclamation of danger, and that those who propose to enter its zone must govern themselves accordingly.

"Recognizing this principle, we have added to the usual rule of 'reasonable care under the circumstances,' the specific requirement that the traveler approaching a railroad crossing must look and listen. Accompanying this statement of the rule is the added requirement that the observation must be made at a point or from a position where it would be effective."

*Spokane County v. Great Northern R. Co.,* 178 Wash. 389, 35 P. (2d) 1, we think also sustains appellants' contention herein, both on the facts and the rule therein applied.

There are many decisions by this court dealing in some measure with highway crossing accidents. We think no good purpose would be served by a further discussion of such cases, believing, as we do, that the cases referred to herein express the rules adopted and followed by this court under a state of facts such as shown in the instant case.

We conclude, therefore, that the court erred in not holding, as a matter of law, that deceased was guilty of contributory negligence, barring a recovery herein, and that because of such error, this case must be reversed, unless the evidence herein was properly submitted to the jury along with the presumption of due care arising because of the death of Wade Morris.

■ Was it proper in this case to submit to the jury an instruction on presumption of due care, three disinterested witnesses having testified to deceased's actions in the operation of his truck for at least a quarter of a mile before and up to the scene of the accident?

The first case we desire to refer to is *Norman v. Bellingham,* 46 Wash. 205, 89 Pac. 559, wherein we stated:

"In this state the burden is upon the party affirming it to establish contributory negligence, and where the evidence is silent as to the question, due care is presumed."

In the case of *Woolf v. Washington R. & N. Co.,* 37 Wash. 491, 79 Pac. 997, plaintiff contended the presumption of due care should be applied. It was held the presumption was not applicable, because of the testimony of two witnesses, the court therein stating:

"Were there no proof in the case bearing upon this matter, it would probably be proper to indulge this presumption. . . . Such a presumption is not to be invoked where there is competent, material evidence upon the question involved."

In *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870, the court, in discussing the effect and character of presumptions, quoted from *Peters v. Lohr*, 24 S. D. 605, 124 N. W. 853:

" 'A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party; *but the presumption should never be placed in the scale to be weighed as evidence.* The presumption, when the opposite party has produced *prima facie* evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponents' *prima facie* evidence with evidence and not presumptions. A presumption is not evidence of a fact, but purely a conclusion.' " (Italics ours.)

In the cited case, the verdict was for plaintiff. Defendant's motion for judgment notwithstanding the verdict was granted, and this judgment we affirmed.

*Beeman v. Puget Sound Traction etc. Co.*, 79 Wash. 137, 139 Pac. 1087, quotes with approval from *Paul v. United Rys. Co.*, 152 Mo. App. 577, 134 S. W. 3, as follows:

" ' "Presumptions" as happily stated by a scholarly counselor *ore tenus,* in another case, "may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." That presumptions have no place in the presence of actual facts disclosed to the jury, or where plaintiff should have known the facts had he exercised ordinary care, is held in many cases . . . To give place to pre-

sumptions on the facts of this case, is but to play with shadows and reject substance.' "

In *Smith v. Inland Empire R. Co.,* 114 Wash. 441, 195 Pac. 236, the following rule is announced:

"Since no one saw the deceased at the time he approached the crossing, and since there was no evidence to show what he did at or before he attempted to cross the railway track, it must be presumed that he used due care."

In the cases of *Jensen v. Culbert,* 134 Wash. 599, 236 Pac. 101; *Romano v. Short Line Stage Co.,* 142 Wash. 419, 253 Pac. 657; *Mattingley v. Oregon-Washington R. & N. Co.,* 153 Wash. 514, 280 Pac. 46, the rule that if no witness saw the accident, due care must be presumed, was announced and followed, with this addition, that in the *Mattingley* case, where the only witnesses were interested witnesses, we still held the rule was applicable.

In *Eaton v. Hewitt,* 171 Wash. 260, 17 P. (2d) 906, and *Smith v. Seattle,* 172 Wash. 66, 19 P. (2d) 652, we again stated that the presumption of due care was applicable, there being no evidence as to what the one killed did or did not do.

In *Reinhart v. Oregon-Washington R. & N. Co.,* 174 Wash. 320, 24 P. (2d) 615, the rule is also announced that, where there is no evidence to the contrary, there is a presumption that one killed in an accident was, at the time, in the exercise of due care. It is also stated in the cited case that this presumption is not evidence, but will serve as such until *prima facie* evidence has been introduced by the opposite party; that the presumption of due care may be overcome by the direct testimony of disinterested witnesses, but it is not overcome by the testimony of interested witnesses, or from inferences that may be drawn from circumstantial facts.

*Carlson v. Seattle,* 175 Wash. 388, 27 P. (2d) 717, was

tried to the court without a jury. We held, there being competent and credible testimony as to what the deceased did before and up to the time of the collision, it was not a case where due care must be presumed.

*Spokane County v. Great Northern R. Co.,* 178 Wash. 389, 35 P. (2d) 1, we think much in point on the facts. In the cited case, a challenge to the sufficiency of the evidence was sustained at the close of plaintiff's case. We therein stated:

"The authority relied upon by appellant and others to like effect are not controlling here, because in this case several witnesses testified that they saw Mr. Sharkey approach the track and observed him up to the moment of the accident. Under the evidence in the case at bar, there is no room for the application of the rule as to the presumption of due care. This case rather falls within the rule laid down in *Woolf v. Washington R. & Nav. Co.,* 37 Wash. 491, 79 Pac. 997, and *Carlson v. Seattle,* 175 Wash. 388, 27 P. (2d) 717.

We now come to the case of *Karp v. Herder,* 181 Wash. 583, 44 P. (2d) 808. In the cited case, there were two disinterested witnesses who testified relative to the action of Mrs. Karp, who was killed in the accident, but nevertheless we held it was proper to submit to the jury an instruction on the presumption of due care, saying:

"Whether this story [referring to the testimony of one of the witnesses] was true, partially true, or false, was for the jury, and not the court, to say. If taken at its face value, it, of course, was sufficient to overcome the presumption of due care on the part of Mrs. Karp. If not so accepted, it was not sufficient. The court properly left the question for the determination of the jury."

In *Trainor v. Interstate Const. Co.,* 187 Wash. 142, 60 P. (2d) 7, the question presented was whether or not Mr. Hoyt, who died as a result of the accident, was guilty of contributory negligence as a matter of law.

We held that deceased was guilty of contributory negligence as a matter of law, and that the presumption of due care must give way to the definite testimony of Mrs. Hoyt, who testified to exactly what Mr. Hoyt did prior and up to the time of the accident. In the cited case, the court attempted to distinguish the *Karp* case, as follows:

"It would thus appear that whether the presumption was overcome as a matter of law or is a question of fact for the jury, must depend upon the facts of the particular case."

In *Hamblet v. Soderburg*, 189 Wash. 449, 65 P. (2d) 1267, the trial court sustained a challenge to the sufficiency of the evidence at the close of plaintiff's case, and dismissed the action. The judgment was affirmed. In the cited case, there were a number of eye-witnesses to deceased's actions from the time she started to enter the intersection until she was struck, and we again announced the rule as follows:

"There being testimony as to every movement of the deceased, there is no room for a presumption that she used due care. The facts are clear and undisputed, presenting no question upon which reasonable minds might differ and therefore no question to go to the jury."

We think the rule is based primarily upon the fact that there is no evidence to show what the deceased did or did not do immediately preceding the accident; and so, where an action is brought for damages resulting from such death, in order that the action may go forward, in the first instance, to that stage of the proceedings where it can be presented to a court or jury, the law indulges in a conclusion which presumably is based upon human experience, that the deceased must be presumed to have used due care.

This presumption, however, being purely a conclusion, and not evidence of anything, it must follow, it seems to us, that, when disinterested witnesses testify as to such actions of the deceased, even though such testimony may be in conflict or be disputed, the presumption must disappear. In other words, where there is such testimony, there is no longer any reason for the rule, and to say that, regardless of such testimony, the jury has a right to also consider the presumption, would, in our opinion, be permitting the presumption to be placed in the scale, to be weighed as evidence.

We appreciate that the decision in the *Karp* case, *supra*, may seem to find some support in one or two of our decisions rendered prior thereto; nevertheless, after a careful consideration of all our cases touching this question, we are convinced that the rule announced in the *Karp* case, to the effect that, even where there is testimony of disinterested witnesses, still the presumption may go to the jury, together with such testimony, it being for the jury to determine whether or not the presumption has been overcome, is contrary to the rule announced by this court and, almost without exception, followed prior to such decision, and is, we think, contrary to the rule announced in the *Trainor* and *Soderburg* cases, *supra*, decided subsequent thereto.

We are therefore now of the opinion that the following are the proper rules to be applied relative to the presumption of due care:

(1) This presumption is not evidence, but will serve in the place of evidence until *prima facie* evidence has been introduced by the opposite party.

(2) This presumption entirely disappears from the case upon the introduction of competent and material testimony of disinterested witnesses, as to the actions of the deceased immediately prior to and continuing

up to the time of the accident; and where such testimony is introduced, the presumption should in no event be submitted to the jury. However, even though there be the testimony of disinterested witnesses, such testimony and all the other competent and material evidence must be submitted to the jury, unless the court can say that the essential and controlling facts necessary to establish the contributory negligence of deceased are undisputed, and that the only reasonable inference which can be drawn therefrom is that deceased failed to exercise that degree of care required of him, under the conditions existing at the time and place of the accident.

(3) Where the only testimony introduced in opposition to the presumption is that of interested witnesses, or where there is no testimony as to the actions of the deceased immediately prior to and at the time of the accident, the presumption must go to the jury, together with all the testimony and exhibits properly introduced in the case, unless from all the evidence the court can say that the contributory negligence of the person killed was so evident that reasonable minds could not differ thereon.

There being, in the instant case, testimony of disinterested witnesses as to the acts of deceased immediately prior to and up to the time of the accident, there is no room for the presumption that deceased used due care.

We think the facts are clear and undisputed, presenting no question upon which reasonable minds might differ; and, therefore, there was no question to go to the jury, and the trial court should therefore have so determined as a matter of law and granted appellants' motion for judgment notwithstanding the verdict.

For the reasons herein assigned, the judgment is reversed, with instructions to dismiss the action.

BEALS and GERAGHTY, JJ., concur.

STEINERT, J. (concurring)—I am in full accord with all that is said in the opinion except that part, near the conclusion, designated as rule (3). As I view it, the purpose and effect of a presumption are, in any event, merely to require the opposite party to come forward with evidence upon the particular issue involved, but the presumption itself is not evidence and should not be weighed as such against actual facts. When the opposite party has been required to assume the burden of coming forward with evidence, the presumption has then not only accomplished its purpose but has also, at the same time, completely spent its force. No part of the presumption being left, it neither possesses nor retains anything of substance in itself to be submitted to the jury.

If the testimony offered by the opposite party be that of interested witnesses, the *case,* as then made, should go to the jury, but without any reference to the presumption, and the jury should then decide the issues solely upon the *evidence* before it. To cast the presumption into the scale as an added element is to give it weight as evidence, and to instruct the jury with reference to the presumption is affirmatively to invite the jury to consider it as evidence. This, in my opinion, is contrary to the function of a presumption and gives it a character to which it is not entitled.

BLAKE, C. J. (dissenting)—Putting aside the presumption of due care—under the facts and circumstances surrounding the crossing and the collision, as set out in the opinion, I think the question of contributory negligence was for the jury.

ON REHEARING.

[*En Banc.* March 14, 1940.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.

BLAKE, C. J., MAIN, and MILLARD, JJ., dissent.

